## SKIPPER v. SOUTH CAROLINA

No. 84–6859.   Argued February 24, 1986—Decided April 29, 1986

2

WHITE, J., delivered the opinion of the Court, in which BRENNAN, MAR-SHALL, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. POWELL, J., filed an opinion concurring in the judgment, in which BURGER, C. J., and REHNQUIST, J., joined, *post*, p. 9.

*David I. Bruck*, by appointment of the Court, 474 U. S. 942, argued the cause and filed briefs for petitioner.

*Harold M. Coombs, Jr.*, Assistant Attorney General of South Carolina, argued the cause for respondent. With him on the brief was *T. Travis Medlock*, Attorney General.*

JUSTICE WHITE delivered the opinion of the Court.

Petitioner Ronald Skipper was convicted in a South Carolina trial court of capital murder and rape. The State sought the death penalty, and a separate sentencing hearing was held before the trial jury under S. C. Code § 16–3–20 (1985), which provides for a bifurcated trial and jury sentencing in capital cases. Following introduction by the State of evidence in aggravation of the offense (principally evidence of petitioner's history of sexually assaultive behavior), petitioner presented as mitigating evidence his own testimony and that of his former wife, his mother, his sister, and his grandmother. This testimony, for the most part, concerned

---

*A brief of *amici curiae* was filed for the State of Alabama et al. by *David Crump, Charles A. Graddick*, Attorney General of Alabama, *Steve Clark*, Attorney General of Arkansas, *James J. Kelly*, Chief State's Attorney of Connecticut, *Jim Smith*, Attorney General of Florida, *James T. Jones*, Attorney General of Idaho, *William L. Webster*, Attorney General of Missouri, *LeRoy S. Zimmerman*, Attorney General of Pennsylvania, *Gerald L. Baliles*, Attorney General of Virginia, *Kenneth O. Eikenberry*, Attorney General of Washington, and *Archie G. McClintock*, Attorney General of Wyoming.

the difficult circumstances of his upbringing. Petitioner and his former wife, however, both testified briefly that petitioner had conducted himself well during the 7½ months he spent in jail between his arrest and trial. Petitioner also testified that during a prior period of incarceration he had earned the equivalent of a high school diploma and that, if sentenced to life imprisonment rather than to death, he would behave himself in prison and would attempt to work so that he could contribute money to the support of his family.

Petitioner also sought to introduce testimony of two jailers and one "regular visitor" to the jail to the effect that petitioner had "made a good adjustment" during his time spent in jail. The trial court, however, ruled that under the South Carolina Supreme Court's decision in *State* v. *Koon*, 278 S. C. 528, 298 S. E. 2d 769 (1982) *(Koon I)*, such evidence would be irrelevant and hence inadmissible. The decision in *Koon I*, the judge stated, stood for the rule that "whether [petitioner] can adjust or not adjust" was "not an issue in this case." App. 11.

After hearing closing arguments — during the course of which the prosecutor contended that petitioner would pose disciplinary problems if sentenced to prison and would likely rape other prisoners, *id.*, at 13–14 — the jury sentenced petitioner to death. On appeal, petitioner contended that the trial court had committed constitutional error in excluding the testimony of the jailers and the visitor: the testimony of these witnesses, petitioner argued, would have constituted relevant mitigating evidence, and exclusion of such evidence was improper under this Court's decisions in *Lockett* v. *Ohio*, 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982). The Supreme Court of South Carolina rejected petitioner's contention, stating:

> "The trial judge properly refused to admit evidence of [petitioner's] *future* adaptability to prison life. *State* v. *Koon, supra.* However, evidence of his past adaptability was admitted through testimony of his former wife,

his mother and his own testimony. This contention is without merit." 285 S. C. 42, 48, 328 S. E. 2d 58, 61–62 (1985).

We granted certiorari, 474 U. S. 900 (1985), to consider petitioner's claim that the South Carolina Supreme Court's decision is inconsistent with this Court's decisions in *Lockett* and *Eddings*, and we now reverse.

There is no disputing that this Court's decision in *Eddings* requires that in capital cases "'the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Eddings, supra,* at 110 (quoting *Lockett, supra,* at 604 (plurality opinion of BURGER, C. J.)) (emphasis in original). Equally clear is the corollary rule that the sentencer may not refuse to consider or be precluded from considering "any relevant mitigating evidence." 455 U. S., at 114. These rules are now well established, and the State does not question them.

Accordingly, the only question before us is whether the exclusion from the sentencing hearing of the testimony petitioner proffered regarding his good behavior during the over seven months he spent in jail awaiting trial deprived petitioner of his right to place before the sentencer relevant evidence in mitigation of punishment. It can hardly be disputed that it did. The State does not contest that the witnesses petitioner attempted to place on the stand would have testified that petitioner had been a well-behaved and well-adjusted prisoner, nor does the State dispute that the jury could have drawn favorable inferences from this testimony regarding petitioner's character and his probable future conduct if sentenced to life in prison. Although it is true that any such inferences would not relate specifically to petitioner's culpability for the crime he committed, see *Koon I, supra,* at 536, 298 S. E. 2d, at 774, there is no question but that such inferences would be "mitigating" in the sense that

they might serve "as a basis for a sentence less than death."
*Lockett, supra,* at 604. Consideration of a defendant's past
conduct as indicative of his probable future behavior is an in-
evitable and not undesirable element of criminal sentencing:
"any sentencing authority must predict a convicted person's
probable future conduct when it engages in the process of
determining what punishment to impose." *Jurek* v. *Texas,*
428 U. S. 262, 275 (1976) (opinion of Stewart, POWELL, and
STEVENS, JJ.). The Court has therefore held that evidence
that a defendant would in the future pose a danger to the com-
munity if he were not executed may be treated as establishing
an "aggravating factor" for purposes of capital sentencing,
*Jurek* v. *Texas, supra;* see also *Barefoot* v. *Estelle,* 463 U. S.
880 (1983). Likewise, evidence that the defendant would not
pose a danger if spared (but incarcerated) must be considered
potentially mitigating.[1] Under *Eddings,* such evidence may
not be excluded from the sentencer's consideration.

The State advances several arguments as to why the ex-
clusion of petitioner's proffered evidence was, nonetheless,
not erroneous. First, the State contends that the trial court
ruled only that petitioner's witnesses could not offer incom-
petent lay opinion testimony regarding petitioner's ability
to adjust to prison life in the future. *Eddings,* the State
argues, does not displace reasonable state-law rules regard-
ing the competency of testimony. The record does not, how-
ever, support the State's contention that the trial court's

---

[1] The relevance of evidence of probable future conduct in prison as a
factor in aggravation or mitigation of an offense is underscored in this par-
ticular case by the prosecutor's closing argument, which urged the jury to
return a sentence of death in part because petitioner could not be trusted
to behave if he were simply returned to prison. Where the prosecution
specifically relies on a prediction of future dangerousness in asking for the
death penalty, it is not only the rule of *Lockett* and *Eddings* that requires
that the defendant be afforded an opportunity to introduce evidence on this
point; it is also the elemental due process requirement that a defendant not
be sentenced to death "on the basis of information which he had no oppor-
tunity to deny or explain." *Gardner* v. *Florida,* 430 U. S. 349, 362 (1977).

ruling was no more than an evenhanded application of rules restricting the use of opinion testimony. It is true that petitioner's request for a ruling on the admissibility of the testimony of the two jailers and the "regular visitor" was immediately preceded by an attempt to introduce his former wife's opinion (ruled inadmissible by the trial judge, App. 10) regarding his prospects for adjustment to prison life. In seeking a ruling on the testimony of the three witnesses at issue here, however, petitioner made it clear that he expected them "to testify that [petitioner] *has made* a good adjustment" to jail. *Id.*, at 11 (emphasis added). Defense counsel was not offering opinion testimony regarding future events. Under these circumstances, any ruling premised on the assumption that petitioner planned to present incompetent opinion testimony would have been—as the State conceded at oral argument—a "mistake." Such a misunderstanding could by no means justify the exclusion of nonopinion evidence bearing on the defendant's ability to adjust to prison life.

Second, the State echoes the South Carolina Supreme Court in arguing that the trial court's ruling was not improper because it did not prevent petitioner from introducing evidence of past good conduct in jail for purposes of establishing his good character, but only foreclosed the introduction of "irrelevant" evidence of his *future* adaptability to prison life. There is no clear support for this contention in the record of this case, as the trial court did not explicitly rely on any such distinction and appears to have excluded petitioner's evidence of good conduct for any purpose whatsoever. The State's proposed distinction between use of evidence of past good conduct to prove good character and use of the same evidence to establish future good conduct in prison seems to be drawn from the decision of the South Carolina Supreme Court in another case altogether, *State* v. *Koon*, 285 S. C. 1, 328 S. E. 2d 625 *(Koon II)*, cert. denied, 471 U. S. 1036 (1985). There, the court stated that although "fu-

ture adaptability to prison [is] irrelevant evidence because it does not bear on a defendant's character, prior record, or the circumstances of his offense[,] . . . [p]ast behavior in prison does bear on a defendant's character and, therefore, is relevant." 285 S. C., at 3, 328 S. E. 2d, at 626. This distinction is elusive. As we have explained above, a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is itself an aspect of his character that is by its nature relevant to the sentencing determination.[2] Accordingly, the precise meaning and practical significance of the decision in *Koon II* and of the State's argument is difficult to assess. Assuming, however, that the rule would in any case have the effect of precluding the defendant from introducing otherwise admissible evidence for the explicit purpose of convincing the jury that he should be spared the death penalty because he would pose no undue danger to his jailers or fellow prisoners and could lead a useful life behind bars if sentenced to life imprisonment, the rule would not pass muster under *Eddings*. Since the trial court's ruling in this case—whether or not it can credibly be said to be consistent with *Koon II*—at least had this effect, it cannot stand under *Eddings*.

Finally, the State seems to suggest that exclusion of the proffered testimony was proper because the testimony was merely cumulative of the testimony of petitioner and his for-

---

[2] We do not hold that all facets of the defendant's ability to adjust to prison life must be treated as relevant and potentially mitigating. For example, we have no quarrel with the statement of the Supreme Court of South Carolina that "how often [the defendant] will take a shower" is irrelevant to the sentencing determination. *State* v. *Plath*, 281 S. C. 1, 15, 313 S. E. 2d 619, 627, cert. denied, 467 U. S. 1265 (1984). In the case before us, there is no credible suggestion that petitioner sought to introduce evidence of his personal hygiene practices. Rather, petitioner apparently attempted to introduce evidence suggesting that he had been a well-behaved and disciplined prisoner. Such evidence of adjustability to life in prison unquestionably goes to a feature of the defendant's character that is highly relevant to a jury's sentencing determination.

mer wife that petitioner's behavior in jail awaiting trial was satisfactory, and of petitioner's testimony that, if sentenced to prison rather than to death, he would attempt to use his time productively and would not cause trouble. We think, however, that characterizing the excluded evidence as cumulative and its exclusion as harmless is implausible on the facts before us. The evidence petitioner was allowed to present on the issue of his conduct in jail was the sort of evidence that a jury naturally would tend to discount as self-serving. The testimony of more disinterested witnesses — and, in particular, of jailers who would have had no particular reason to be favorably predisposed toward one of their charges — would quite naturally be given much greater weight by the jury. Nor can we confidently conclude that credible evidence that petitioner was a good prisoner would have had no effect upon the jury's deliberations. The prosecutor himself, in closing argument, made much of the dangers petitioner would pose if sentenced to prison, and went so far as to assert that petitioner could be expected to rape other inmates. Under these circumstances, it appears reasonably likely that the exclusion of evidence bearing upon petitioner's behavior in jail (and hence, upon his likely future behavior in prison) may have affected the jury's decision to impose the death sentence. Thus, under any standard, the exclusion of the evidence was sufficiently prejudicial to constitute reversible error.

The exclusion by the state trial court of relevant mitigating evidence impeded the sentencing jury's ability to carry out its task of considering all relevant facets of the character and record of the individual offender. The resulting death sentence cannot stand, although the State is of course not precluded from again seeking to impose the death sentence, provided that it does so through a new sentencing hearing at which petitioner is permitted to present any and all relevant mitigating evidence that is available. *Eddings*, 455 U. S., at 117. The judgment of the Supreme Court of South Carolina

is therefore reversed insofar as it affirms the death sentence, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE POWELL, with whom THE CHIEF JUSTICE and JUSTICE REHNQUIST join, concurring in the judgment.

Although I agree that petitioner's death sentence must be vacated, that result is not required by our decisions in *Lockett* v. *Ohio*, 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982). I would reverse the judgment below, not because the trial court excluded "relevant mitigating evidence" within the meaning of those decisions, *id.*, at 114; see *Lockett, supra,* at 604–605, but because petitioner was not allowed to rebut evidence and argument used against him. See *Gardner* v. *Florida,* 430 U. S. 349 (1977).

I

In the course of cross-examining petitioner at his sentencing proceeding, the prosecutor adduced testimony that petitioner had kicked the bars of his cell following his arrest.[1] In closing argument, the prosecutor contended that petitioner was likely to commit violent crimes in prison if allowed to live, and referred to the incident in petitioner's cell to support his characterization of petitioner as a hopelessly violent man:

> "[Petitioner's] wife said he told her . . . that he had been raped in prison. With his history and what you know about him, who do you think the raper was and who do

_____

[1] The following colloquy took place at the close of the cross-examination:

"Q: You are the fellow that when you got to the Horry County jail went to kicking the cell, right?

"A: Yes, Sir.

"Q: That's you. [T]hat's the kind of fellow you are, but you are nice today, right?" App. 7.

you think the rapee was? And if given the opportunity again with this four time sexual abusing loser, who do you think will get raped in prison? Will it be Ronald Skipper, big old robust Ronald Skipper who knocks woman *[sic]* in the side of the head, or will it be some little boy in prison?

.    .    .    .    .

"These are the mitigating circumstances submitted by the defendant. . . . That the defendant has shown significant and positive adjustments to confinement and education and employment skills that enable him to be a stable and productive prisoner. Didn't he admit kicking on the bars over there? That's the kind of prisoner he is. Kicking on the bar. Kicking on the bars. . . ." App. 14.

Petitioner had offered evidence that would undermine this line of argument: the testimony of two guards and a prison visitor, all of whom would have testified that petitioner had behaved well while in prison awaiting trial. The trial court excluded that evidence, relying on the Supreme Court of South Carolina's decision in *State* v. *Koon*, 278 S. C. 528, 298 S. E. 2d 769 (1982). Petitioner was sentenced to death, and the Supreme Court of South Carolina affirmed the sentence. 285 S. C. 42, 328 S. E. 2d 58 (1985).

## II

The Court correctly concludes that the exclusion of the proffered testimony violated due process. *Ante,* at 5, n. 1. In *Gardner* v. *Florida, supra,* we vacated a death sentence on the ground that the sentencing judge had considered a confidential presentence report without permitting the defendant to see the report. The plurality concluded that the defendant was denied due process because "the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." *Id.,* at 362 (opinion of STEVENS, J.). See also *id.,* at 364 (WHITE, J., concurring in judgment) (applying the same analysis

under the Eighth Amendment). As in *Gardner*, petitioner in this case was not permitted to "deny or explain" evidence on which his death sentence may, in part, have rested. This error was aggravated by the prosecutor's closing argument, which emphasized and exaggerated petitioner's misconduct in prison after his arrest. Therefore, petitioner's death sentence violates the rule in *Gardner*.

## III

### A

The Court unnecessarily abandons this narrow ground of decision for a broader one, holding that the proffered testimony was mitigating evidence that must be admitted under the Eighth Amendment. In my view, the Court's reasoning is flawed. The Eighth Amendment requires that the sentencing authority consider "relevant mitigating evidence" concerning the defendant's "character or record" and "the circumstances of the offense." *Eddings* v. *Oklahoma, supra,* at 114; *Lockett* v. *Ohio, supra,* at 604. But the States, and not this Court, retain "the traditional authority" to determine what particular evidence within the broad categories described in *Lockett* and *Eddings* is relevant in the first instance. 438 U. S., at 604, n. 12. As long as those determinations are reasonable—as long as they do not foreclose consideration of factors that may tend to reduce the defendant's culpability for his crime, see *Eddings, supra,* at 115–116—this Court should respect them.

I see no reason why a State could not, consistent with these principles, exclude evidence of a defendant's good behavior in jail following his arrest, as long as the evidence is not offered to rebut testimony or argument such as that tendered by the prosecution here. Such evidence has no bearing at all on the "circumstances of the offense," since it concerns the defendant's behavior after the crime has been committed. Nor does it say anything necessarily relevant

about a defendant's "character or record," as that phrase was used in *Lockett* and *Eddings*.

Those decisions clearly focus on evidence that lessens the defendant's culpability for the crime for which he was convicted. The sentencing jury in *Lockett* was barred from considering evidence of the defendant's youth, her "lack of specific intent to cause death," and "her relatively minor part in the crime." 438 U. S., at 597. Such evidence obviously bore strongly on the degree to which the defendant was morally responsible for her crime; indeed, we have since held that similar evidence *precludes* application of the death penalty for precisely this reason. *Enmund* v. *Florida,* 458 U. S. 782, 798–801 (1982). In *Eddings,* the judge refused to consider the defendant's youth and history of "beatings by a harsh father, and of severe emotional disturbance." 455 U. S., at 115. We emphasized that this evidence tended to diminish the defendant's responsibility for his acts, noting that youths "are less mature and responsible than adults," *id.,* at 116, and that they "'deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms than adults.'" *Id.,* at 115, n. 11, quoting Twentieth Century Fund Task Force on Sentencing Policy Toward Young Offenders, Confronting Youth Crime 7 (1978). The type of evidence required to be admitted under *Lockett* and *Eddings* thus pertained to conduct and circumstances *prior* to the crime, and to the nature and extent of the defendant's participation in the crime. In this case, for the first time, the Court classifies as "mitigating" conduct that occurred *after* the crime and after the accused has been charged. Almost by definition, such conduct neither excuses the defendant's crime nor reduces his responsibility for its commission. It cannot, therefore, properly be considered "mitigating evidence" that the sentencer must consider under the Constitution.

## B

It is useful to recall the origins of the rule the Court applies today. Ten years ago, in *Woodson* v. *North Carolina,* 428 U. S. 280 (1976), we determined that States could not carry out the death penalty without some "particularized consideration of relevant aspects of the character and record of each convicted defendant." *Id.,* at 303 (plurality opinion). See also *Roberts* v. *Louisiana,* 428 U. S. 325, 333–336 (1976) (plurality opinion). That determination flowed from the conviction that "individual culpability is not always measured by the category of the crime committed." *Furman* v. *Georgia,* 408 U. S. 238, 402 (1972) (BURGER, C. J., dissenting), quoted in *Woodson, supra,* at 298. See also *Roberts, supra,* at 333. Thus, we reasoned, it was unconstitutionally arbitrary to execute a man or woman without considering factors showing that death was not a "just and appropriate sentence." *Woodson, supra,* at 304. Cf. *Enmund* v. *Florida, supra.*

*Lockett* and *Eddings* followed naturally from our decision in *Woodson.* But it also follows from *Woodson* and its companion cases that States are only bound to consider those factors that are central to the fundamental justice of execution. We have recognized that society has important and legitimate interests in retribution and deterrence, and that these interests provide the necessary justification for imposing the death penalty. *Gregg* v. *Georgia,* 428 U. S. 153, 183–187 (1976) (joint opinion). Society's legitimate desire for retribution is less strong with respect to a defendant who played a minor role in the murder for which he was convicted. Cf. *Lockett,* 438 U. S., at 597. Similarly, the death penalty has little deterrent force against defendants who have reduced capacity for considered choice. Cf. *Eddings,* 455 U. S., at 115, n. 11. Evidence concerning the degree of the defendant's participation in the crime, or his age and emotional history, thus bear directly on the fundamental justice

of imposing capital punishment. That simply cannot be said of the defendant's behavior in prison following his arrest. Society's interest in retribution can hardly be lessened by the knowledge that a brutal murderer, for self-interested reasons, has been a model of deportment in prison while awaiting trial or sentence. Nor is society's important interest in deterrence served by allowing such a murderer to avoid the death penalty by following his counsel's advice to behave himself in a tightly controlled prison environment.[2]

## IV

Even if a defendant's apparent capacity to adjust well to prison fell within the scope of the mitigating factors that must be considered under *Lockett* and *Eddings*, a State should have the right to exclude evidence of conduct in prison while awaiting trial or sentencing. One arrested for a capital crime, and particularly a convicted defendant awaiting sentencing, has every incentive to behave flawlessly in prison if good behavior might cause the sentencing authority to spare his life.[3] Good behavior in those circumstances would

---

[2] We have noted that for many types of murders, "the death penalty undoubtedly is a significant deterrent." *Gregg* v. *Georgia*, 428 U. S. 153, 185–186 (1976). See also *id.*, at 186 (actual deterrent value of death penalty in particular contexts "is a complex factual issue the resolution of which properly rests with the legislatures"). This deterrent value inevitably is diluted when defendants are allowed to escape execution based on factors that have nothing to do with their criminal responsibility. The consequences of such mistakes extend further than the cases in which they occur, for when some defendants are able to avoid execution based on irrelevant criteria, there is a far graver risk of injustice in executing others. See *Furman* v. *Georgia*, 408 U. S. 238, 311–314 (1972) (WHITE, J., concurring). I thus find it difficult to accept the proposition that the Constitution *compels* States to consider factors, such as a defendant's willingness to conform to prison rules, that plainly undermine deterrence without advancing retributive goals.

[3] After today's decision competent defense counsel in capital cases will instruct their clients to behave like Eagle Scouts while awaiting trial, and particularly while awaiting sentencing. In capital cases, this will be more important to a defendant than the customary advice of counsel in a criminal

rarely be predictive as to the conduct of the prisoner *after* sentence has been imposed. For this further reason, state courts reasonably could determine that such evidence has little or no probative value. Certainly it will not aid the sentencer in "distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." *Furman* v. *Georgia, supra,* at 313 (WHITE, J., concurring), quoted in *Gregg* v. *Georgia, supra,* at 188.

The Court's contrary determination apparently rests on the notion that the States have little or no authority to decide that certain types of evidence may have insufficient probative value to justify their admission. But cf. *ante,* at 7, n. 2. *Lockett* explicitly rejected such an approach, 438 U. S., at 604, n. 12, and for good reason. This Court has no special expertise in deciding whether particular categories of evidence are too speculative or insubstantial to merit consideration by the sentencer. Cf. *Barefoot* v. *Estelle,* 463 U. S. 880, 899–902 (1983). It makes little sense, then, to substitute our judgment of relevance for that of state courts and legislatures. Nor is such intrusive review necessary in this context to guard against fundamentally unjust executions. One cannot plausibly equate the type of evidence at issue in *Lockett* and *Eddings* with evidence that a capital defendant has refrained from assaulting anyone in prison while awaiting trial or sentencing. I would therefore leave the disposition of evidence of the kind involved here to the States, subject to the requirements of due process.

---

trial to advise his client to behave himself while in the courtroom. It is indeed novel doctrine that compliance with this advice by a defendant charged with capital murder becomes a "mitigating factor" that the sentencing judge or jury must—as a matter of constitutional law—consider in passing sentence.