OPINION AND JUDGMENT ENTRY
This case is on appeal from the May 29, 1998 judgment of the Erie County Court of Common Pleas, which found appellant to be a delinquent and committed him to the Department of Youth Services for a minimum period of one year and a maximum period not to exceed the date he reached the age of twenty-one years. On appeal, appellant, Jerry W., asserts the following assignments of error:
 "I. The trial court committed plain error and/or erred as a matter of law to the prejudice of Appellant in the original decision and findings of fact when it required the defendant to prove self-defense `beyond a reasonable doubt.'
 "II. The trial court erred as a matter of law and/or abused its discretion in filing an amended decision and findings of fact sua sponte, in violation of Juvenile Rule 40(E)(2), six months after the original order and changing the standard of law applied to the burden of proof aspect of the Defendant's self-defense claim.
 "III. The trial court erred and/or abused its discretion by finding against the manifest weight of the evidence that the Defendant failed to show self-defense by a preponderance of the evidence under the modified Magistrate's decision and findings of fact.
 "IV. The trial court violated the Due Process Clause of the United States and Ohio Constitutions and violated the Ohio Rules of Criminal Procedure by not allowing the Defendant or his Counsel to participate in sentencing."
On June 12, 1996, a complaint in delinquency was filed against Jerry W., a seventeen-year old minor, who was accused of felonious assault: attempting to cause serious physical harm to Patrick Sherman by means of a deadly weapon, in violation of R.C.2903.11. Following an adjudication hearing on July 26, 1996, the magistrate found on July 30, 1996, that appellant did not prove beyond a reasonable doubt that he acted in self-defense because he did not have any evidence to corroborate his testimony that Sherman was carrying a bat. Furthermore, the magistrate found that appellant was only two houses away from his home and could have retreated to his home for protection.
On August 8, 1996, appellant objected to the magistrate's proposed decision and findings of fact. His motion did not state any specific objections because the transcript was not available until August 23, 1996. On September 6, 1996, appellant filed additional objections to the magistrate's proposed decision. He argued that the magistrate applied the wrong standard of proof for appellant's claim of self-defense and that the decision was contrary to the manifest weight of the evidence, because appellant proved by a preponderance of the evidence that he acted in self-defense and did not violate his duty to retreat.
On January 23, 1997, the magistrate amended her prior decision by substituting the correct standard of proof for appellant's defense of self-defense. On February 6, 1997, appellant again filed objections to the magistrate's amended decision. This time, he argued that the amended decision is not authorized by the Juvenile Rules and that the decision was contrary to the manifest weight of the evidence.
On October 3, 1997, the court reviewed and adopted the magistrate's amended decision. On May 29, 1998, the court found that appellant is a delinquent because of the felonious assault and ordered him to be committed to the legal custody of the Department of Youth Services. On June 29, 1998, appellant filed a notice of appeal with this court.
The following evidence was presented at the July 26, 1996 hearing regarding an incident which occurred on the evening of May 31, 1996. Tina Johnson, appellant's neighbor, testified that on that evening she was watching television when she heard a commotion outside. From her window, she watched a car stop near her home and several youths get out and start yelling at the kids down the street. The youths got back in the car and quickly drove backwards down the street out of her view. She then heard some of the neighborhood kids yell for appellant to run to his house. As appellant passed her house, she saw that he was being chased by several people, one of whom she could see (identified by other witnesses as Sherman) and the others she could only hear. She did not see Sherman carrying any weapons. When they were in front of her house, she saw appellant pull out a small handgun and fire it while he ran. Sherman was approximately four and one-half feet behind appellant at the time. Johnson then left the window to protect her children.
Officer Alexander, who responded to the scene about ten minutes after the incident, testified that when he arrived he could smell the odor of gunpowder. He went to appellant's home and appellant told him that he had been chased by several people to his home. When questioned about having fired a gun, appellant told the officer that he had thrown a lighted firecracker at the assailants. The officer did not find any remains of a firecracker or bullets in the area. At that time appellant was sweating profusely, was very nervous, and acted jumpy.
Officer West testified that he stopped the vehicle involved in the incident and searched the five individuals in the car and the car for weapons. No weapons were found. One of the individuals gave the officer a small bat taken from the car. It was about eight-to-ten inches long and an inch wide. Each of the individuals denied knowledge of the bat. When Officer West arrived at the scene, he too could smell the odor of gunpowder.
Patrick Sherman testified as follows. That evening, he was riding around with four other kids. He sat in the back seat behind the driver. As the group passed by appellant and a group of others, a rock hit Sherman. Sherman's group stopped their car, backed up, and Sherman accused appellant of hitting him with a rock. Appellant responded with an epithet and started running. Sherman started chasing appellant. Sherman denied having any weapon at the time. After appellant fired at him, Sherman returned to his car. Shortly after they left the area, they were stopped by the police. Sherman did not know appellant, but Sherman recognized him. Sherman had seen appellant a few hours earlier when he was in a car with some other people who had pointed a gun at Sherman as they passed by. Sherman denied arguing with the neighborhood kids. He also testified that only he chased appellant. Sherman believed that appellant fired a cap gun because he was so close when appellant fired but did not get hit.
Demond Hicks testified that he drove the vehicle involved in the incident. All he could recall was Sherman asking him to back up and then Sherman got out and chased appellant. Hicks heard one shot fired. After the police searched Hick's vehicle and told Hicks he could leave, he gave them the small bat they had found in the car and laid on the roof of the car. He told the police that he did not know anything about the small bat in the back seat of the car. He also did not recall any of his passengers getting hit with a rock and no rock had hit his car.
Jason Hicks testified that he was also riding in the car that evening with Sherman. He heard someone call them a name, so they backed the car up and Sherman got out to confront appellant. Appellant began to run and Sherman chased after him. Sherman was not carrying a bat or gun at the time. Hicks heard a gun shot and saw Sherman fall to the ground. Then Sherman got up and ran back to the car and said appellant must have had a fake gun. Hicks recalled seeing a small bat in the car but did not know to whom it belonged. He recalled Sherman saying he got hit with a rock, but Hicks did not see it happen.
Officer Frost testified that when he arrived at the scene, he also smelled gunpowder. Appellant told Officer Frost that he had been holding a gun for DeShaun Jackson earlier in the day but had given it back to him before this incident occurred. Earlier that day the officer had searched Jackson's room at his mother's request and did not find a gun. Whenever the officer confronted appellant to explain how appellant's story did not check out, appellant would change it slightly. No gun was found in appellant's possession. The officer could not find any remains from a firecracker or gun, or any shells or bullets in the area.
Appellant testified in his own defense. He denied having been in a car earlier that day when a gun was pulled on Sherman. Earlier in the day, Hicks had called appellant and asked to speak to his sister. Appellant told him to call later and hung up on him. Hicks called back and argued some more. Appellant again hung up the phone. When Hicks called again, appellant's sister answered the phone and Hicks told her that he was coming over. Then, appellant, his sister, and cousin walked to the store. On their return, appellant told his sister and cousin to walk on ahead of him because he wanted to talk to someone in a car. He then saw a car back up and Hicks got out. Then Sherman got out with a fourteen-to-fifteen inch bat in his hands. When appellant saw the bat, he started running. Sherman began to chase him. So, appellant pulled out a gun and fired backward toward the trees when Sherman was a least ten feet behind appellant. The gun belonged to a friend of his. He fired it because he was scared. He knew that Sherman was going to hurt him and believed that he was going to catch up with him. He fired the gun as he ran and did not aim at Sherman because he was only trying to frighten him. Appellant ran home and disposed of the gun in the back yard. He never told the police he had fired a gun because he was scared. He also had never told the police about the bat.
In his first assignment of error, appellant argues that the trial court erred when it found appellant to be a delinquent when the magistrate originally applied the wrong standard of proof to the issue of appellant's defense of self-defense. We agree that the magistrate initially used the wrong standard of proof. However, the magistrate issued an amended decision correctly setting forth the standard of proof on this issue and the trial court adopted that decision. However, appellant asserts in his second assignment of error that the magistrate did not have the authority to render an amended decision to correct the standard of proof. He argues that Juv.R. 40(E)(2) only permits an amended decision to be issued for purposes of including findings of fact and conclusions of law. He argues that there is no authority for amending a decision to correct an error of law.
Since the magistrate's decision is not a final, appealable order, the only issue that appellant can raise on appeal is whether the trial court erred when it adopted the amended magistrate's decision.
Except in certain circumstances as outline in Juv.R. 40(C)(3), a magistrate only renders a decision. Juv.R. 40(E). The magistrate's decision is merely an additional resource for the court to use in determining the issues before it. Hartt v. Munobe
(1993), 67 Ohio St.3d 3, 5-6; and In re Zakov (1995), 107 Ohio App.3d 716,717, citing In the Matter of Michael (1991), 71 Ohio App.3d 727,729. Therefore, a magistrate's decision is not a final appealable order. It must be adopted by the trial court and become the order of the court. Juv.R. 40(E)(4)(a) and Pace v.Pace (Oct. 8, 1996), Gallia App. No. 95CA17, unreported. The ultimate responsibility for determining the issues presented remains with the trial court judge. Hartt, supra, at 5.
The magistrate must amend its decision to include findings of fact and conclusions of law if a party's request to do so is made after the magistrate has rendered a decision. Juv.R. 40(E)(2). However, this rule cannot be read to limit the magistrate's ability to amend its decision for other reasons.
Assuming, arguendo, that a magistrate does not have the authority to amend its decision, the trial court still retains the ultimate responsibility in a bench trial for finding the facts, determining the applicable law, and applying the law to the facts. Therefore, the only issue on appeal is whether the trial court rendered a lawful decision. In this case, we find that the court did apply the proper standard of proof.
Therefore, we find appellant's first and second assignments of error not well-taken.
In his third assignment of error, appellant argues that the trial court's finding that appellant did not act in self-defense was contrary to the manifest weight of the evidence.
A challenge to the weight of the evidence questions whether a greater amount of credible evidence was admitted to support the conviction than not. State v. Smith (1997), 80 Ohio St.3d 89,113, certiorari denied (1998), 140 L.Ed.2d 949,118 S.Ct. 1811, 66 U.S.L.W. 3748; and State v. Thompkins (1997),78 Ohio St.3d 380, 386-387. The trial court adopted the magistrate's decision that appellant had not acted in self-defense because there was no evidence that Sherman was carrying a bat other than appellant's testimony. Apparently, the court concluded that appellant's testimony was not credible on this issue. Nonetheless, even if Sherman had been carrying a bat, the court also concluded that appellant could have retreated to his home before firing since he was only two houses away when he fired.
Under Ohio law, deadly force may be used in self-defense if: 1) the defendant did not create the conflict; 2) he honestly believed that death or great bodily harm was imminent and that the only means of escape was to use deadly force; and 3) he did not violate a duty to retreat or avoid the danger. State v.Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus;State v. Thomas (1997), 77 Ohio St.3d 323, 326; and State v.Sallie (1998), 81 Ohio St.3d 673, 675.
Upon a review of all of the evidence in this case as a whole, we find that the manifest weight of the evidence supports the court's finding that appellant committed the felonious assault. We cannot find any basis for concluding that the trial court clearly lost its way or that a manifest miscarriage of justice occurred. The trial court, as the fact finder, did not find credible appellant's testimony that he honestly believed that he would be killed or suffer great bodily harm. As an appellate court, we must uphold the credibility determinations made by the fact finder. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Furthermore, the weight of the evidence supports the trial court's finding that appellant could have retreated to his home without firing the weapon.
Appellant's third assignment of error is not well-taken.
In his fourth assignment of error, appellant argues that the trial court denied him due process when it did not permit him to participate in the sentencing proceedings. Since appellant did not first present this alleged error to the trial court, he must demonstrate that it constitutes plain error: error which affects a substantial right and must be corrected to prevent a miscarriage of justice. Crim.R. 52(B) and State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus, certiorari denied (1984),465 U.S. 1106.
Appellant and his counsel were present at the disposition hearing. However, at that hearing, the magistrate indicated that she had met earlier with other court personnel to determine the options available to the court. She indicated that she generally meets with the hearing officers, the judge, the Director of Probation, the Director of Court Services, and others. She did not, however, indicate the specific persons who attended the meeting regarding this case. The magistrate also indicated that during that meeting the consensus was that the court should decide that there was no alternative except to commit appellant to the Department of Youth Services. She stated at the end of the hearing that the internal meeting of the court was to discuss options and that the disposition hearing was appellant's opportunity to provide input as to the issue of disposition.
Appellant argues that he was denied due process because he was not given a meaningful opportunity to be heard. He argues that the decision to confine him was made prior to the disposition hearing based upon information which was supplied to the court during the internal court meeting and which was not disclosed to appellant. Therefore, he argues that he could not properly challenge its accuracy or relevancy. We agree.
The United States Supreme Court has held that juveniles are entitled to certain elements of due process and fair treatment provided to adult criminal defendants. In re Gault (1967),387 U.S. 1, 27-31. However, the two classes are not identical because of the state's interest in the welfare of the juvenile. Therefore, the rights of the two are not identical. McKeiver v.Pennsylvania (1971), 403 U.S. 528, 545.
Due process requires that an adult criminal defendant's death sentence must be imposed upon information which the defendant has had an opportunity to deny or explain. Gardner v.Florida (1977), 430 U.S. 349, 362. See, also, Skipper v. SouthCarolina (1986), 476 U.S. 1, 9 (J., Powell, concurring), affirmed in part and reversed in part in Penry v. Lynaugh (1989), 492 U.S.
302. Under Ohio law, R.C. 2951.03(B) requires that a presentence investigation report be disclosed to an adult felony criminal defendant prior to sentencing, with the exception of certain information enumerated in the statute. Two of the exceptions are for any recommendations as to the sentence to be imposed and diagnostic opinions if they would seriously disrupt rehabilitation plans.
We could find no case law regarding the right of a juvenile to have access to presentencing information supplied to the court or the right of the juvenile to be present during an internal court meeting where the disposition of the juvenile is discussed. However, we conclude that due process requires that a juvenile, who faces commitment to a state institution, at least be given access to the information that formed the basis of the court's decision and the identity of the parties providing that information. It would be fundamentally unjust to deny the juvenile an opportunity to know the facts underlying the basis for the court's decision and to challenge or explain those facts. We presume in this case that the prosecutor was not present at the meeting; otherwise, this internal meeting process would be fundamentally unfair. We further find that the violation of the constitutional right to due process constitutes plain error in this case. Appellant's fourth assignment of error is well-taken.
Having found that the trial court did commit error prejudicial to appellant, the judgment of the Erie County Court of Common Pleas is reversed. This case is remanded to the trial court for the sole purpose of resentencing appellant, pursuant to guidelines set forth herein. Pursuant to App.R. 24, appellee is hereby ordered to pay the court costs incurred on appeal.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 Melvin L. Resnick, J.
 Richard W. Knepper, J.
CONCUR.