MARTIN, Circuit Judge,
concurring in result only:
I agree with the Majority that Mr. Troy is not entitled to habeas relief because any constitutional error committed at his trial was harmless under the test established in Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). But I do not join in the Majority’s ruling that there was no constitutional violation during the penalty phase of Mr. Troy’s trial.
We need not decide here whether the Florida Supreme Court’s decision is entitled to deference under the Antiterrorism and Effective Death Penalty Act (AED-PA). That is because “even if AEDPA deference does not apply, [Mr. Troy] cannot show prejudice under de novo review, the more favorable standard of review for [him].” Berghuis v. Thompkins, 560 U.S. 370, 390, 130 S.Ct. 2250, 2265, 176 L.Ed.2d 1098 (2010). The Supreme Court allows us to deny “writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review.” Id. (citing 28 U.S.C. § 2254(a)); see also Mansfield v. Sec’y, Dep’t of Corr., 679 F.3d 1301, 1308 (11th Cir.2012) (“[A] federal habeas court may deny relief based solely on a determination that a federal constitutional error was harmless under the Brecht standard.”).
And for me it is “unclear” whether AEDPA deference should apply to the Florida Supreme Court’s determination that the state trial court properly excluded Mr. Galemore’s testimony. See Troy v. State, 948 So.2d 635, 650-51 (Fla.2006). In Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Supreme Court established the bedrock Eighth Amendment principle that a sentencer in a capital casé must “not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and 'any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” Id. at 604, 98 S.Ct. at 2965. Of course, the Majority correctly points out that the Supreme Court in no way intended Lockett to *1320 “lirait[ ] the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant’s character, prior record, or the circumstances of his offense.” Id. at 605 n. 12, 98 S.Ct. at 2965 n. 12. But I part ways with my colleagues’ conclusion that Mr. Galemore would have said nothing constitutionally relevant about “Troy’s character, conduct, or individual qualities, and could only have guessed about Troy’s potential conditions of imprisonment.” See Maj. Op. at 1307.
It surely means something that when the Supreme Court has “addressed directly the relevance standard applicable to mitigating evidence in capital cases ... [the Court] spoke in the most expansive terms.” Tennard v. Dretke, 542 U.S. 274, 284, 124 S.Ct. 2562, 2570, 159 L.Ed.2d 384 (2004) (citation omitted). For example, in reversing the Fifth Circuit Court of Appeals for applying too narrow a test for mitigation, the Supreme Court explained:
[T]he meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding than in any other context, and thus the general evidentiary standard— any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence' — applies.... Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value. Thus, a State cannot bar the consideration of .... evidence if the sentencer could reasonably find that it warrants a sentence less than death.
Once this low threshold for relevance is met, the Eighth Amendment requires that the jury be able to consider and give effect to a capital defendant’s mitigating evidence.
Id. at 284-85, 124 S.Ct. at 2570 (citations and quotation marks omitted); see also Payne v. Tennessee, 501 U.S. 808, 822, 111 S.Ct. 2597, 2606-07, 115 L.Ed.2d 720 (1991) (“We have held that a State cannot preclude the sentencer from considering ‘any relevant mitigating evidence’ that the defendant proffers in support of a sentence less than death.... [V]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances.” (quotation marks omitted)). Under this clearly established Supreme Court law, Mr. Gale-more’s testimony is relevant mitigating evidence because it “tends logically to prove ... some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.” Tennard, 542 U.S. at 284, 124 S.Ct. at 2570. The specific “fact or circumstance” Mr. Troy sought to prove by way of Mr. Galemore’s testimony was Mr. Troy’s “disposition to make a well-behaved and peaceful adjustment to life in prison.” See Skipper v. South Carolina, 476 U.S. 1, 7, 106 S.Ct. 1669, 1672, 90 L.Ed.2d 1 (1986). The Supreme Court has said this type of evidence “is itself an aspect of [a defendant’s] character that is by its nature relevant to the sentencing determination.” Id. I am not swayed, as the majority is, by the facts that Mr. Gale-more had not interviewed Mr. Troy and could not testify with any certainty about Mr. Troy’s designation to a particular prison. These facts could no doubt offer fertile grounds for cross examination. But they do not render Mr. Galemore’s testimony irrelevant on the topic of whether Mr. Troy “would pose no undue danger to his jailer or fellow prisoners and could lead a useful life behind bars.” Id.
Beyond Eighth Amendment mitigation concerns, the excluding Mr. Galemore’s testimony also implicates serious due pro *1321 cess concerns. A capital defendant is “denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain.” Gardner v. Florida, 430 U.S. 349, 362, 97 S.Ct. 1197, 1207, 51 L.Ed.2d 393 (1977). Mr. Troy and the State both introduced evidence about Mr. Troy’s prior drug use in prison, as well as the connection between his drug use and criminal behavior. This highlights the crucial importance of information about whether Mr. Troy would have access to drugs in close custody condition of confinement, regardless of where Mr. Troy was in prisoned. Mr. Galemore would have spoken directly to this issue. I understand that the state trial court did not allow the state to argue that Mr. Troy would have access to drugs if he were sentenced to life, but it did allow the state to impeach defense witnesses on this very issue.
Specifically, during cross examination of defense witnesses, the state raised questions about Mr. Troy’s future dangerousness in prison; invited the jury to speculate about his access to drugs while in prison; and highlighted the effect his possible drug use might have on his prospects for adjusting well and not posing a threat to inmates and staff. Once the state undertook to raise these issues, Mr. Troy was constitutionally entitled to rebut the state’s evidence and inferences. See Kelly v. South Carolina, 534 U.S. 246, 252-57, 122 S.Ct. 726, 731-33, 151 L.Ed.2d 670 (2002) (holding that a capital defendant is entitled to rebut future dangerousness even it is merely implied by the evidence presented at trial, rather than explicitly argued).
As I mentioned, I have analyzed all of this without the deference ordinarily required by AEDPA. That is because even under the de novo review I have used, a habeas petition can only be granted if the constitutional violation at the trial level resulted in “actual prejudice” to the petitioner. Brecht, 507 U.S. at 637, 113 S.Ct. at 1722. And as the majority has meticulously set out, Mr. Troy was allowed to present what certainly seems to be a mountain of mitigating evidence. Several of the witnesses the jury did hear, specifically talked about his good prison behavior in the past and his potential to adapt well in the future. This being the case, and in light of all the other mitigating and aggravating evidence presented, the fact that the jury did not hear Mr. Galemore’s testimony did not have a substantial an injurious effect on the outcome of Mr. Troy’s trial. I therefore agree with my colleagues that Mr. Troy is not entitled to habeas relief.