# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3729

_____

Dennis Skillicorn,                      *
                                        *
              Appellant,                *
                                        *  Appeal from the United States
     v.                                 *  District Court for the Western
                                        *  District of Missouri
Al Luebbers,                            *
                                        *
              Appellee.                 *

_____

Submitted: September 25, 2006
      Filed: February 6, 2007 (corrected 2/8/07)

_____

Before LOKEN, Chief Judge, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Dennis Skillicorn was convicted in Missouri state court of first-degree murder and sentenced to death. The district court[1] denied Skillicorn's petition for habeas corpus pursuant to 28 U.S.C. § 2254, but granted a certificate of appealability on eight issues. We affirm the district court.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

# I. BACKGROUND

In late August 1994, Skillicorn, Allen Nicklasson, and Tim DeGraffenreid headed east from Kansas City to obtain illegal drugs. On August 23, 1994, the 1983 Chevrolet Caprice in which they were traveling broke down on I-70. They refused a state trooper's offer of help. When the three had progressed only a few more miles the following day, they decided to burglarize a home in the vicinity. They stole guns and money, using the stolen money to pay for a tow to nearby Kingdom City, Missouri. A garage in Kingdom City was unable to fully repair the car's mechanical problems. The trio then drove the car back east toward the site of their earlier robbery. The car stalled again just outside of Kingdom City. Richard Drummond was driving by and saw the stranded motorists. Unfortunately for Drummond, he stopped and offered to take them to use a phone.

The three loaded the loot from the earlier burglary into the trunk of Drummond's car, and got in, with DeGraffenreid in the front, and Skillicorn and Nicklasson in the back. Nicklasson pulled a gun on Drummond, forcing him to drive them at gunpoint. According to Skillicorn's statement to the FBI, as Nicklasson held a gun to Drummond's head, Skillicorn asked Drummond questions ostensibly in order to calm him down, but included in the questioning whether Drummond's "old lady" would miss him. As Drummond drove east, Skillicorn "got to thinking . . . if we let this guy off, he's got this car phone." Skillicorn told Drummond that they would have to disable the car phone, and take Drummond "out in the woods somewhere on one of these side roads" and "lose" him. At some point during this time, Nicklasson and Skillicorn discussed what they should do with Drummond. Skillicorn claimed that Nicklasson told him that Nicklasson was going have to "do something to this guy. I tell him–you know, now, we're trying to talk on the pretenses that–that, uh, this guy in the front seat don't hear us too. Right? Right. 'Cause, uh, I didn't want him panicking."

They ultimately directed Drummond to a secluded area off an I-70 exit just east of Higginsville, Missouri. As Nicklasson prepared to walk Drummond through a field toward a wooded area, Skillicorn demanded Drummond's wallet. Knowing that Nicklasson carried a loaded .22 caliber pistol, Skillicorn watched as Nicklasson led Drummond into the wooded area. There, Nicklasson shot Drummond twice in the head. Skillicorn acknowledged hearing two shots from the woods and that Nicklasson returned and stated that he had "done what he had to do." Drummond's remains were found eight days later.

Following this murder, Skillicorn and Nicklasson dropped DeGraffenreid off in Blue Springs, Missouri, and then fled the state. While on the run, in Arizona, Nicklasson shot and killed a man under circumstances similar to the Drummond murder–the man tried to help them retrieve their car from where it was stuck in the sand. After killing this good Samaritan, the two went back to his house and Nicklasson killed the man's wife as well. Nicklasson and Skillicorn then absconded across California, stealing a purse from a woman in a supermarket and committing armed robbery along the way. They eventually made it to Mexico, where, according to Skillicorn, Nicklasson killed a waitress at a diner. Eventually the two returned to the United States, and both were arrested in San Diego after the police picked them up on successive days as hitchhikers.

Following his arrest in San Diego, Nicklasson gave a confession to the FBI. Nicklasson admitted that he marched Drummond into the woods at gunpoint. Nicklasson alleged in this statement that he had a rope in his pocket to tie Drummond up, but he "snapped" and instead decided to shoot him, somewhat on an impulsive whim. Nicklasson also described the Arizona murders and numerous robberies the two committed while on the lam, and how he had killed his own abusive father at age nine.

Skillicorn also gave a sworn statement to the FBI admitting his involvement in the Drummond murder and giving some of the details about Drummond's final drive, recounted above. In his statement, Skillicorn told the FBI that he knew Nicklasson did *not* have a rope in his pocket as he led Drummond into the woods. Skillicorn also recounted the Arizona murders, the burglaries and armed robberies committed on the journey, and described how Nicklasson had killed the waitress in Mexico. Skillicorn was charged by the state of Missouri with first-degree murder on an accomplice theory. He proceeded to trial primarily on the theory that he did not possess the requisite culpable state of mind–deliberation–to be convicted of first-degree murder.

Prior to Skillicorn's trial, the defense filed a motion to admit the statement of Nicklasson (who was unavailable as a witness due to his invocation of his Fifth Amendment rights). Skillicorn wanted to introduce this evidence–through the testimony of the FBI agent who interviewed both Skillicorn and Nicklasson in San Diego–to help prove that he did not know Nicklasson was going to kill Drummond. Skillicorn argued that the statement was admissible because it was a statement against Nicklasson's penal interest that was exculpatory of Skillicorn. The trial court ruled pretrial that the hearsay statement was not admissible, but noted that he might reconsider the issue when the agent testified during the state's case-in-chief. During the guilt phase[2] of the trial, the jury did not hear any portion of Nicklasson's statement.

During the penalty phase of trial, the defense sought to introduce the testimony of a psychiatrist, Dr. Spiridigliozzi. Spiridigliozzi had examined Skillicorn and was prepared to testify that Skillicorn had a lower IQ, and that his dependent personality made him a "follower." Spiridigliozzi brought Skillicorn's file with him to the witness stand when he was called to testify. The prosecutor objected because he had not been supplied with the file, even though he had requested all relevant discovery materials.

---

[2]During the penalty phase, the jury did hear portions (including the "snapped" comment) of Nicklasson's statement, as one of Skillicorn's attorney's read parts of the FBI agent's testimony into the record.

-4-

After a lengthy in-chambers exchange between the court and counsel for both parties, the trial court ordered the defense to turn the file over, or risk exclusion of the witness, and Skillicorn's attorney chose the latter option.

Skillicorn was convicted of first-degree murder by the jury. The same jury recommended a death sentence following the penalty phase of trial. On March 18, 1996, the trial court sentenced Skillicorn to death.

**State Court Adjudication**

On direct appeal, the Missouri Supreme Court found that Skillicorn's federal due process rights were not violated by exclusion of Nicklasson's statement, and applied Chambers v. Mississippi, 410 U.S. 284 (1973), in conducting this analysis. The court held that because the statement did not have considerable assurances of reliability, its admission was not required under Chambers. State v. Skillicorn, 944 S.W.2d 877, 884-85 (Mo. 1997) (Skillicorn I). The court deemed the statement not reliable because in it, Nicklasson sought to exonerate himself of the mental state required for first-degree murder and because the statement was uncorroborated by evidence. Id. at 885. With regard to the absence of the expert testimony and the refusal of defense counsel to turn over the file, the Missouri Supreme Court found that Skillicorn waived any physician-patient privilege by putting his mental condition at issue during the penalty phase. The court also found that the file was not attorney work product. Id. at 897-98.

Skillicorn then petitioned the trial court for postconviction relief, raising several claims of ineffective assistance of counsel. The trial court rejected these claims, and the Missouri Supreme Court affirmed. Skillicorn v. State, 22 S.W.3d 678, 682-90 (Mo. 2000) (Skillicorn II). Skillicorn then filed the current petition for habeas corpus relief under 28 U.S.C. § 2254. The district court denied the petition, but granted a certificate of appealability on eight claims.

-5-

## II.    DISCUSSION

We may not grant a writ of habeas corpus with respect to any issue decided by the Missouri state courts unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court."  28 U.S.C. § 2254(d).  Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 411 (2000).  We address each issue from the certificate in turn.

### A.    Exclusion of Nicklasson's Confession

Skillicorn argues the Missouri Supreme Court unreasonably applied Chambers in rejecting his claim that the trial judge inappropriately excluded Nicklasson's confession to an FBI agent, violating his due process rights to a fair trial.  The district court concluded that the Missouri Supreme Court did not unreasonably apply Chambers.  In Chambers, the Supreme Court held that a defendant has a constitutional right to proffer exonerating statements, that would otherwise be hearsay, if they were made under circumstances providing "considerable assurance of their reliability." 410 U.S. at 300.  One of those indicia is that the statement is truly against the penal interest of the speaker.  Id. at 301.  The district court agreed with the Missouri Supreme Court that Nicklasson's statement was not against his penal interest because he was arguably attempting to minimize his deliberation by saying that he had a rope, but killed Drummond only after "snapp[ing]."  Therefore, the statement was not "unquestionably against interest."  Id.  We agree with the district court's analysis that the statement was not unquestionably against Nicklasson's interest.

-6-

Furthermore, we note that the statement lacked corroboration. In it, Nicklasson said that he had a rope in his back pocket. But in Skillicorn's statement, he said that he knew Nicklasson did *not* have a rope with which Drummond could have been tied instead of being killed. In fact, besides Nicklasson's statement, there was no other evidence of a rope, unlike the Chambers statement which was corroborated by numerous pieces of evidence. Id. at 300. Finally, the Chambers statement was "made spontaneously to a close acquaintance shortly after the murder had occurred." Id. That clearly was not the case with Nicklasson's statement. Nicklasson's statement was made to an FBI agent several weeks after the murder. We do not mean to suggest that Mirandized statements to authorities are inherently unreliable. We simply note that the statement was made under far different circumstances than the Chambers statement. The Chambers Court intimated that a spontaneous utterance to a close friend would normally be considered reliable. Id. By the time Nicklasson gave a statement to the FBI, he had committed numerous other murders and armed robberies. He may have been motivated to paint the most flattering portrait of himself as possible to the authorities. It is also possible that the statement *was* reliable because, at that point, Nicklasson's case was beyond hope, and he had no motivation to do anything but come clean. At any rate, however, we find that the Missouri Supreme Court's adjudication of this issue was not unreasonable.

Skillicorn argues that the Missouri court wrongly decided that no statement is ever admissible unless it falls into one (or all) of the three categories delineated by Chambers, and that this is contrary to later Supreme Court decisions interpreting Chambers. However, the later cases cited by Skillicorn are distinguishable. In Crane v. Kentucky, 476 U.S. 683, 688-90 (1986), the Court's key holding was that if a confession *is admitted*, the circumstances of how it was obtained are admissible. In Green v. Georgia, 442 U.S. 95 (1979) (per curiam), the Court held that a co-defendant's confession was admissible at the penalty phase of a murder trial. The Court deemed the statement reliable, among other reasons, because it was made spontaneously to a close friend, it was against the speaker's penal interest and

corroborated by other evidence, and the defendant had no ulterior motive to make the statement. Id. at 97. As we have noted, this is distinguishable from the situation with Nicklasson's statement.

Nor is Skillicorn's characterization of the Missouri Supreme Court's opinion accurate. The Missouri court did not so closely circumscribe the conditions under which an accomplice's statement might be admissible. The court merely noted that Chambers had set forth three tests of reliability, and that none of those "indicators of reliability delineated in Chambers" were present in Skillicorn's case. Skillicorn I, 944 S.W.2d at 885. After discussing the circumstances in which Nicklasson's statement was made to the FBI and the content of the statement, the court held that there were not considerable assurances of the statement's reliability. Id. Far from unreasonably applying Chambers, the Missouri court appears to have correctly applied it.

Finally, Skillicorn argues that his due process rights were violated with regard to Nicklasson's statement because the same statement that was deemed unreliable in Skillicorn's trial, was successfully used by the government to convict Nicklasson of first-degree murder in his own trial. We disagree. Nicklasson's statement was hearsay in Skillicorn's trial. In Nicklasson's trial, it was an admission, and therefore not hearsay. State v. Case, 140 S.W.3d 80, 85 (Mo. Ct. App. 2004). Because the statement was of a completely different character in the two proceedings, Skillicorn's due process argument fails.

Chambers is the controlling Supreme Court precedent on this issue, and the Missouri Supreme Court did not apply it unreasonably to the facts of Skillicorn's case in determining that the statement was not reliable. Therefore, that court correctly dispatched its duty under 28 U.S.C. § 2254(d). Skillicorn's argument is without merit.

## B.    Exclusion of Skillicorn's Expert Witness

Skillicorn next argues that the trial court erred in excluding his expert's proffered testimony during the penalty phase. The Missouri Supreme Court found that Skillicorn waived any physician-patient privilege by placing his mental condition at issue during the penalty phase. The court also found that the file was not attorney work product. Skillicorn I, 944 S.W.2d at 897-98. Thus, the files and notes the doctor sought to rely upon to testify should have been disclosed to the government prior to trial. Though raised by Skillicorn, the Missouri court did not adjudicate a federal due process[3] claim with regard to this issue. Accordingly, our standard of review is less deferential. See Taylor v. Bowersox, 329 F.3d 963, 967-68 (8th Cir. 2003) (holding that when there is no state court adjudication of a claim, we do not apply the AEDPA's deferential standard of review but review the district court's factual determinations for clear error and its legal conclusions de novo).

The exclusion of a witness based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair. Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995). To meet this burden, a habeas petitioner must show that "absent the alleged impropriety the verdict probably would have been different." Id. (quotation omitted). In the context of this penalty-phase argument, Skillicorn must demonstrate that the jury probably would not have recommended the death penalty had it heard Dr. Spiridigliozzi's testimony. Skillicorn cannot clear this high hurdle.

---

[3]To the extent Skillicorn attempts to raise an equal protection claim, it was not presented to the state courts. Thus, it is unexhausted and at this point, procedurally defaulted because there is no remaining state remedy. Interiano v. Dormire, 471 F.3d 854, 856 (8th Cir. 2006). Therefore, we do not consider the equal protection claim, though we strongly doubt that it would have succeeded.

In support of his argument that there was impropriety at trial, Skillicorn asserts that the trial court wrongly found that his trial counsel had committed a discovery violation with regard to the expert's file. He further contends that the Missouri Supreme Court applied arbitrary and mechanistic rules to deny him the right to present evidence. A review of the record indicates that the trial court believed that Skillicorn's counsel had displayed willful blindness with regard to his expert–counsel did not ask for a copy of the doctor's post-examination reports or conclusions concerning Skillicorn so that counsel would not have to turn over such documents during discovery. Trial counsel's counter-argument was that he had disclosed Spiridigliozzi as a witness, and if the government wanted to know what he was going to say, it could have taken Spiridigliozzi's deposition.

We find that the Missouri Supreme Court did not improperly apply its evidentiary rules in upholding the trial court's decision to exclude this evidence. Despite Skillicorn's arguments to the contrary, the Missouri Supreme Court applied rather ordinary rules of discovery and evidence in finding that the trial court acted appropriately in excluding this evidence. As a named expert, the materials he planned to rely upon in testifying were certainly discoverable. State v. Thompson, 985 S.W.2d 779, 786 (Mo. 1999). And because the defense placed Skillicorn's mental state at issue during the penalty phase of trial, any physician-patient privilege that might protect the file was waived. Id.

After reviewing the record, including the lengthy exchange in chambers between the court, counsel, and Dr. Spiridigliozzi, we are left with the same impression as the trial court–trial counsel attempted to use the file as both a shield and a sword. Counsel claimed that he had no knowledge of or control over the file and therefore was not required to produce it during discovery. But during the exchange in chambers, when the court asked Dr. Spiridigliozzi himself to turn over the file, counsel exerted control over the file by refusing to allow the doctor to do so. The trial court's exclusion of the witness under these circumstances does not seem arbitrary or

mechanistic–to the contrary, it seems a fair exercise of its discretion. See, e.g., State v. Tripp, 168 S.W.3d 667, 673 (Mo. Ct. App. 2005) ("The decision of whether or not to suppress evidence as a sanction for noncompliance with discovery rests within the trial court's discretion."). We see no error of constitutional magnitude in the Missouri courts' handling of this matter. Skillicorn's due process argument is denied.

## C. Ineffective Assistance of Counsel

Skillicorn alleges that his Sixth Amendment rights were violated by several instances of ineffective assistance of trial counsel. The Missouri Supreme Court adjudicated these claims in the postconviction appeal in Skillicorn II. A claim of ineffective assistance of counsel requires proof that defense counsel's representation fell below an objective standard of reasonableness and thereby prejudiced the defendant's case. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prevail, Skillicorn must do more than "show that he would have satisfied Strickland's test if his claim were being analyzed [in state court] in the first instance." Bell v. Cone, 535 U.S. 685, 698-99 (2002). Under AEDPA, he must establish that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Id. at 699.

### 1. Annie Wyatt's Testimony

Skillicorn argues the Missouri Supreme Court erred in disposing of his ineffective assistance claim regarding counsel's failure to elicit specific testimony from Annie Wyatt. Wyatt was Nicklasson's girlfriend, and allegedly would have testified that Nicklasson told her that they did not plan to kill Drummond, and that Skillicorn remained in the car during the shooting. Wyatt testified for the prosecution during trial. In Skillicorn II, the Missouri Supreme Court found that since the testimony would have been inadmissible hearsay, counsel was not ineffective. 22 S.W.3d at 686-87. Furthermore, the district court noted that Wyatt testified at the

-11-

postconviction hearing that her boyfriend did *not* make a statement to her. Skillicorn v. Missouri, No. CV197-240CC, PCR Tr. at 128-29 (July 7, 1998).[4] Accordingly, the district court found that counsel was not ineffective for failing to elicit evidence that the witness did not possess.

The Missouri Supreme Court did not unreasonably apply Strickland regarding this issue.[5] First, we take no issue with the Missouri court's application and interpretation of its evidentiary rules. See Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court may not re-examine a state court's interpretation and application of state law."). Wyatt would not have been allowed to testify about Nicklasson's hearsay statements to her. Consequently, counsel is not ineffective for failing to call a witness who would have been unable to testify regarding the pertinent information. And, counsel is certainly not ineffective for failing to ask a witness to testify about things that did not occur. This argument is without merit.

---

[4]The Missouri Supreme Court appears to have made a finding to the contrary–that Wyatt said Nicklasson *did* make such a statement to her. 22 S.W.3d at 686. Though state court factual findings are entitled to a presumption of correctness, 28 U.S.C. § 2254(e)(1), we find the presumption rebutted by clear and convincing evidence here, based on the transcript of the postconviction proceedings.

[5]Skillicorn argues that the Missouri Supreme Court sidestepped the usual Strickland analysis when reviewing this claim. We disagree. The court had initially set out the Strickland standard at the beginning of its analysis in a section called "Our Standard of Review," 22 S.W.3d at 681, and then referred to the legal principles (without necessarily citing Strickland) while disposing of the various claims. This is not sidestepping the Strickland standard. See Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (holding that a state court's decision was not infirm under AEDPA simply because it did not cite Supreme Court precedent, so long as neither the reasoning nor the result of the state court opinion contradicted such precedent).

-12-

## 2.    Failure to Develop Mitigating Evidence

Skillicorn next argues the Missouri Supreme Court unreasonably applied Strickland to his ineffective assistance claim regarding counsel's failure to develop more mitigating evidence of his background and social history for the penalty phase of trial.  Primarily he argues that counsel should have called an expert to testify about Skillicorn's substance abuse, childhood and family background–how each of these things contributed to Skillicorn becoming a compliant follower of sociopaths.

The Missouri Supreme Court rejected this claim.  The court noted that counsel did intend to present such testimony, and in fact Spiridigliozzi initially took the stand, but the discovery dispute about his file, discussed previously, prevented him from testifying.  Skillicorn II, 22 S.W.3d at 684 n.7.  Furthermore, the court found that the proposed evidence was either already in front of the jury through other witnesses, or was unpersuasive.  Accordingly, counsel was not ineffective for failing to present such evidence.  Id. at 685-86.

The Missouri court did not unreasonably apply Strickland with regard to the mitigating evidence.  The district court found that Strickland's performance prong was satisfied with regard to this claim but denied relief because Skillicorn could not establish prejudice.  The court found that there was no reasonable probability that the outcome of the sentencing would have been different had the evidence been presented, because the mitigating "childhood" evidence was not particularly egregious, and evidence of his drug and alcohol problems would not have swayed the jury not to impose the death penalty.

We do not necessarily agree with the district court that the performance prong was satisfied in this case.  The record reflects that trial counsel put on mitigating

-13-

evidence regarding Skillicorn's childhood through the testimony of his sister. There was no evidence that Skillicorn suffered child abuse. His mother died of cancer when he was eight, and, according to his sister, his father had some difficulties as a result of that traumatic event. She also testified that Skillicorn was not a violent person. A worker from the Clay County Detention Center testified that Skillicorn was a good, non-violent prisoner. Counsel attempted to present expert testimony about Skillicorn's low IQ and his tendency to be a "follower," but was thwarted at the eleventh hour due to the expert's unexpected possession of previously undisclosed documents. Apparently there was significant damning evidence in Spiridigliozzi's file that trial counsel did not want to turn over to the prosecution. In light of that, counsel did not make an unreasonable decision by not allowing the expert to testify. Presumably any other expert that counsel could have employed would have had the same difficulty. This is far from a situation where counsel ignored reams of traumatic childhood abuse and other similar experiences. E.g., Williams v. Taylor, 529 U.S. at 395-96; Wiggins v. Smith, 539 U.S. 510, 525-27 (2003). Accordingly, we do not think counsel's performance was constitutionally deficient.

Further, given the other evidence, such as Skillicorn's past conviction for second-degree murder, and the spate of crimes he and Nicklasson committed while on the run, any mitigating testimony likely would have been outweighed even if presented. We do not think more testimony about his childhood and battles with alcohol and drugs would have saved Skillicorn from receiving a sentence of death. See Garcia v. Bertsch, 470 F.3d 748, 757 (8th Cir. 2006) (holding that "friends and family" mitigating evidence would not have resulted in a more lenient sentence in light of aggravating circumstances). Accordingly, Skillicorn could not establish Strickland's prejudice prong in this case. The Missouri Supreme Court's resolution of this issue was not objectively unreasonable, and this claim is without merit.

### 3.    Failure to Put on Good Character Evidence

Skillicorn argues the Missouri Supreme Court unreasonably applied <u>Strickland</u> to his ineffective assistance claim that counsel wrongly did not put on penalty-phase evidence about Skillicorn's good behavior while he was in a drug treatment center, and while he was at county jail awaiting trial. Trial counsel investigated the potential witnesses from the drug treatment center, but apparently did not believe that their testimony would be terribly helpful. As noted in the previous section, trial counsel did present evidence about Skillicorn's time in the county jail. The Missouri Supreme Court held that the proposed evidence added little to the mitigating evidence actually presented. <u>Skillicorn II</u>, 22 S.W.3d at 683. The court also concluded that the volume of aggravating evidence against Skillicorn (including three murders perpetrated by Skillicorn and Nicklasson while on the lam for the Missouri murder) precluded Skillicorn from establishing <u>Strickland</u> prejudice due to counsel's alleged error in omitting this evidence. <u>Id.</u> at 683-84.

This was not an unreasonable application of <u>Strickland</u>. This claim is closely related to the previous ineffective assistance claim, and failed in the Missouri courts for a similar reason–counsel did put on mitigating evidence, Skillicorn just claims that it was not enough. Skillicorn argues that <u>Skipper v. South Carolina</u>, 476 U.S. 1 (1986), and <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978), held that trial counsel has a professional obligation to present all relevant mitigation evidence. That blanket statement overstates these holdings. The holdings in both cases revolved around the issue of whether certain mitigating evidence was *admissible*. <u>Skipper</u>, 476 U.S. at 4-6; <u>Lockett</u>, 438 U.S. at 604. This ineffective assistance claim is without merit.

-15-

### 4. Closing Argument

Skillicorn argues the Missouri Supreme Court unreasonably applied Strickland to his ineffective assistance claim that counsel erred by not addressing the "rope" issue in closing argument: in his confession to police, Skillicorn said that he "knew" Nicklasson did not have a rope when he walked with Drummond into the woods to get rid of him. He later found out that Nicklasson allegedly said he *did* have a rope. So Skillicorn's theory of defense at trial was that he thought Nicklasson was going to tie Drummond up, rather than shoot him. But immediately prior to trial, Nicklasson's confession was deemed inadmissible, while the jury heard Skillicorn's confession. Consequently, Skillicorn's counsel was left in a difficult position with his theory of the case and the evidence he could present.

The Missouri Supreme Court found that counsel was not ineffective simply because he could not explain away the glaring inconsistencies in Skillicorn's case. Id. at 689. Rather than draw attention to the problem by talking about it during closing, counsel attempted to minimize it. The Missouri court found that this was appropriate trial strategy, and counsel's conduct did not run afoul of the Strickland standard. Id.

We agree that this application of Strickland is reasonable. The record supports the notion that counsel made the decisions he did for strategic reasons. Clearly counsel was left in a bad position when Nicklasson's confession was deemed inadmissible. But this position was not counsel's fault as much as the fault of the unfortunate facts of this murder case. This claim is without merit.

**D.    Mexico Murder**

Skillicorn's next claim is that the trial court erred in allowing the state, during the penalty phase, to present evidence of his involvement in the murder at the Mexican diner.  The evidence came in through the use of his pre-trial statement to authorities. He contends that habeas corpus counsel later found out that the authorities could not find corroborating evidence of this murder.  Accordingly, the state's failure to disclose this fact to him violated his right to exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963), and also his Eighth Amendment rights because the jury possibly sentenced him to death based upon his involvement in a "murder that never occurred."

Skillicorn concedes that this claim was not presented to the state courts, and the district court determined that this claim was procedurally barred.  Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted.  Interiano v. Dormire, 471 F.3d 854, 856 (8th Cir. 2006). Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims.  Wainwright v. Sykes, 433 U.S. 72, 87 (1977);  Murray v. Carrier, 477 U.S. 478, 492, 496 (1986).

Skillicorn asserts as cause the fact that the government failed to disclose to him that it was not able to find evidence of the Mexico murder.  The district court found that this was not an adequate "cause" for the default, because Skillicorn knew at trial whether or not he had participated in the Mexico murder.  Nor was Skillicorn prejudiced because the jury heard about several other crimes Skillicorn participated in while running from authorities, in addition to the Mexico murder.  We agree with the district court's analysis of this issue.  Skillicorn cannot establish cause or actual prejudice as contemplated by Murray v. Carrier, and this claim is procedurally barred.

Moreover, we agree with the government that if the claim were adjudicated on the merits, it would fail. The jury heard evidence about the murder in Mexico through Skillicorn's *own statement* regarding his involvement. We fail to see how the fact that the government did not find evidence of a murder, committed at a diner in rural Mexico, is in any way relevant to whether Skillicorn's own admissions about the murder were admissible at trial. This claim is without merit.

**E.     Sufficiency**

Finally, Skillicorn argues the Missouri Supreme Court unreasonably applied Jackson v. Virginia, 443 U.S. 307 (1979), in finding that the evidence was sufficient to support his conviction and sentence. In assessing the Missouri court's determination of whether there was sufficient evidence to support Skillicorn's conviction and death sentence, the scope of our review is extremely limited. Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003). We must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. This standard recognizes that it is the province of the fact-finder, not this court, "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

The Missouri Supreme Court quoted from the portions of Skillicorn's statement regarding the conversations in the car, both with Drummond, and behind his back with Nicklasson. The court found that based on this evidence, the jury could infer that Nicklasson and Skillicorn were furtively discussing Drummond's murder in the back seat; that Skillicorn knew Nicklasson was going to shoot Drummond because he did not have a rope; and that he knew all along that Nicklasson was going to shoot Drummond because he stated that Nicklasson returned from the woods after doing

-18-

"what he had to do." Skillicorn I, 944 S.W.2d at 895. Accordingly, the court denied Skillicorn's sufficiency challenge to the guilty verdict. Id.

With regard to the sentence, the court noted that the jury had found the following three statutory aggravating factors: Skillicorn's previous conviction for second- degree murder, Drummond's murder was committed in conjunction with his kidnaping, and in conjunction with robbery. The court noted that the evidence supported these findings. Id. at 899. The court also found that the sentence was not disproportionate to sentences imposed in other cases, noting that Drummond was killed for the convenience of his murderers, and that Skillicorn's crimes graduated in severity from burglary, to kidnaping and eventually murder. The court accordingly denied the challenge to the sentence. Id. at 898-99.

We think all of the foregoing amply demonstrates the sufficiency of the evidence, and the Missouri courts did not unreasonably apply the Jackson v. Virginia standard.[6] Skillicorn argues there was inadequate evidence of his deliberation, required for first-degree murder. But Skillicorn admits that he knew Nicklasson was going to take Drummond into the woods, at gunpoint, and "lose" him, that he did not want Drummond, who was driving the car, to panic by hearing the trio's plans for him, and finally, that he knew Nicklasson did not really have a rope to "tie up" Drummond instead of shooting him. This is enough evidence for a rational jury to infer that Skillicorn deliberated while Drummond drove the car, and then walked to a wooded area that would become his eventual grave. The Missouri Supreme Court did not unreasonably apply the Jackson v. Virginia standard in disposing of this claim.

---

[6]The Missouri Supreme Court did not actually cite Jackson v. Virginia, but did use the appropriate legal standard in reviewing the claim. Packer, 537 U.S. at 8.

-19-

Regarding the sentence, the jury's decision to recommend the death penalty is supported by sufficient evidence in these circumstances. Skillicorn cannot seriously challenge that he had the requisite mental state to make him eligible for the death penalty under Enmund v. Florida, 458 U.S. 782 (1982).

## III.    CONCLUSION

We affirm the judgment of the district court denying Skillicorn's petition for habeas corpus.

_____