BYE, Circuit Judge,
concurring in part and dissenting in part.
I concur in the court’s opinion, with the following exceptions. With respect to Part II. D, I concur in the discussion regarding Claim 7 (guilt phase restraints), but concur only in the result of the resolution of Claim 16 (penalty phase restraints) because it appears Claim 16, even if meritorious, is foreclosed by Williams v. Norris, 612 F.3d 941 (8th Cir.2010). See id. at 958 (“Williams cannot claim any relief from Deck, because Deck post-dated his trial and the principles articulated therein were not clearly established at that time.”). I respectfully dissent from Part II. C because I believe Cole’s trial counsel was constitutionally ineffective in failing to investigate and present evidence regarding Cole’s exemplary behavior during his pretrial detention.
I
Cole alleges his trial counsel should have called two jail employees, William Bradford and Romel Cochrel, and a nun, Sister Judith Klump, during the penalty phase of his trial. Bradford was in charge of the inmates housed on Cole’s floor and would have testified Cole was an ideal inmate who followed rules, was mild mannered, and an excellent worker. Bradford would have informed the jury as to Cole being one of the select inmates with a prison job, considered a privilege.
Cochrel, a seasoned jailer, was Cole’s housing unit officer and would have testified as to Cole being an exceptional worker with no discipline problems. “[0]ne out every 30 to 40 inmates would be the Andre Cole type. And what I mean by that, you would [ask] somethin’ of him once and ... he would follow through and do what was [asked] of him. He didn’t — he didn’t allow himself to get caught up in a lot of jail house games.” Post-Conviction Hearing Transcript at 286.
Sister Klump ran the jail religious services. She would have testified Cole was an excellent student who knew more than most of the inmates, and that she often asked Cole to start her Scriptures class with a prayer because Cole spoke from the heart.
The Missouri Supreme Court rejected this claim, noting Cole’s “trial counsel was a seasoned, death-penalty litigation attorney” who had “tried nineteen capital murder cases” and who testified that “her experience with presenting evidence on a defendant’s good behavior in jail was generally ineffective.” Cole v. State, 152 S.W.3d 267, 269-70 (Mo.2004). The Missouri Supreme Court did not specifically address whether trial counsel’s investigation into Cole’s jailhouse behavior was adequate, but seemed to have implicitly found it to be adequate. See id. at 269 (finding trial counsel “contacted the corrections officers where [Cole] was being confined and investigated [Cole’s] behavior while in *1197 jail”). The Missouri Supreme Court also stated its belief that the good jailhouse behavior evidence “essentially overlapped” with other evidence presented of Cole’s good behavior and concluded trial counsel was “not ineffective for failing to put on cumulative evidence,” characterizing trial counsel’s decision as a “reasonable choice[] of trial strategy.” Id. at 270.
The Missouri Supreme Court’s resolution of this issue was unreasonable in two respects. First, the implicit factual determination as to trial counsel conducting an adequate investigation into Cole’s jailhouse behavior was an “an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(2). The post-conviction transcript indicates trial counsel did not investigate Cole’s jailhouse behavior. Second, because trial counsel’s investigation was inadequate, the Missouri Supreme Court’s determination that trial counsel made a reasonable choice of trial strategy is “an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). Well-established Supreme Court precedent indicates there must first be an adequate and thorough investigation before trial counsel’s choice can be considered a reasonable strategy decision.
A. The Failure to Investigate
Trial counsel in a capital case is “obligat[ed] to conduct a thorough investigation of the defendant’s background.” Williams v. Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A capital defendant’s lawyer must make diligent efforts “to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.” Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citation omitted). Evidence regarding the exemplary behavior of a capital defendant during time he spends in pretrial detention awaiting trial is clearly “relevant mitigating evidence” which a capital defendant has a “right to place before the sentencer.” Skipper v. South Carolina, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).
The Missouri Supreme Court’s implicit decision as to Cole’s trial counsel having adequately investigated his positive jailhouse behavior is unreasonable. I recognize “[findings of fact made by state appellate courts have the same presumptive correctness as findings of fact made by state trial courts,” Weaver v. Bowersox, 241 F.3d 1024, 1031 (8th Cir.2001), but such presumption is overcome in this case.
The transcript of the post-conviction proceedings establishes that trial counsel did not investigate Cole’s exemplary jailhouse behavior. She never discovered he was involved in the Scripture class or made any attempt to interview Sister Klump. She never conversed with Bradford or Cochrel, or even made an attempt to determine who Cole’s housing unit officer was. Instead, her investigation consisted of seeing correction officers walking around during jailhouse visits with her client. As she would finish visiting Cole she “would say a few things to people. I can’t tell you who those people were by name.” Post-Conviction Transcript at 369. This was the full extent of the testimony presented at the post-conviction hearing on trial counsel’s purported investigation into Cole’s exemplary jailhouse behavior. Saying “things” to jailhouse staff in passing does not constitute an investigation into Skipper-type evidence. A trial counsel’s casual conversations with jail staff, with nothing more than an implied suggestion the conversations even related to her client, clearly does satisfy the strin *1198 gent investigatory duties required by the Supreme Court in capital cases. The Missouri Supreme Court’s decision to the contrary is unreasonable.
I am not persuaded by the state’s reliance on Skillicom v. Luebbers, 475 F.3d 965 (8th Cir.2007). Skillicom rejected a claim that a capital defendant was prejudiced by his counsel’s failure to present Skipper-type evidence of his good behavior while he was in a drug treatment center and at a county jail awaiting trial, recognizing Skipper does not necessarily require an attorney to present positive jailhouse behavior evidence in a capital case. In Skillicom, however, the defendant’s attorney actually investigated the defendant’s good behavior in jail before deciding the evidence would not be terribly helpful. 475 F.3d at 975.
As the Supreme Court noted in Strickland, “strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.” Strickland [v. Washington], 466 U.S. [668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]. On the other hand, strategic choices “resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel.” Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir.1991); see also Wiggins v. Smith, 539 U.S. 510, 527, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (“Strickland does not establish that a cursory investigation automatically justifies a tactical decision.... Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy.” (citing Strickland, 466 U.S. at 691, 104 S.Ct. 2052)).
Armstrong v. Kemna, 534 F.3d 857, 864-65 (8th Cir.2008); see also Sears v. Upton, - U.S. -, 130 S.Ct. 3259, 3265, 177 L.Ed.2d 1025 (2010) (reiterating the “plain” point that a failure to present evidence cannot be justified as a reasonable tactical decision when “counsel did not fulfill their obligation to conduct a thorough investigation of the defendant’s background.” (quoting Williams v. Taylor, 529 U.S. at 396, 120 S.Ct. 1495)). The Missouri Supreme Court therefore unreasonably concluded trial counsel made a reasonable choice of trial strategy to forego presenting jailhouse evidence, where there is no evidence Cole’s trial counsel actually conducted an investigation, let alone an adequate investigation, into his positive jailhouse behavior.
B. Prejudice From the Failure to Present the Evidence
In Skipper, the Supreme Court reversed a South Carolina court’s decision to exclude testimony from two jailers and a regular jail visitor regarding the behavior of a capital defendant during the seven- and-a-half months he spent in pretrial detention awaiting his trial. Significantly, the Supreme Court specifically distinguished the testimony of the two jailers and jailhouse visitor from testimony by Skipper himself and a family member regarding his general good character and adjustment to prison life. South Carolina argued the evidence from the jailers was “merely cumulative” of the evidence offered by the defendant himself and his former wife, and its exclusion was therefore harmless. 476 U.S. at 8, 106 S.Ct. 1669. The Supreme Court rejected that claim, stating:
The evidence petitioner was allowed to present on the issue of his conduct in jail [i.e., from himself and a family member] was the sort of evidence that a jury naturally would tend to discount as self-serving. The testimony of more disinterested witnesses — and, in particular, of jailers who would have had no particular reason to be favorably predisposed *1199 toward one of their charges — would quite naturally be given much greater weight by the jury.

Id.

The Supreme Court also addressed whether the failure to present such evidence could result in prejudice, stating:
Nor can we confidently conclude that credible evidence that petitioner was a good prisoner would have had no effect upon the jury’s deliberations. The prosecutor himself, in closing argument, made much of the dangers petitioner would pose if sentenced to prison, and went so far as to assert that petitioner could be expected to rape other inmates. Under these circumstances, it appears reasonably likely that the exclusion of evidence bearing upon petitioner’s behavior in jail (and hence, upon his likely future behavior in prison) may have affected the jury’s decision to impose the death sentence.

Id.

Similar arguments were made by the prosecutor in this case. The prosecutor argued Cole had escalated his level of violence from one encounter with his ex-wife to the next, and thus implied the death penalty was the next step needed to stop the escalation:
When you think about the culmination of things that were done to be fair to him, for this system to be fair to him — he’s given probation, no more guns, for this one. How does he respond? Ex parte order violation: Unscrewing the lights to teiTorize, to sneak; just like he did in this case. That explosion through the window to terrorize.
No contact. How does he respond to that in 1995? Along with the guns we know what he did. He went back into [ ] that house.
So, the Court escalates things a little. No contact provisions aren’t working. He keeps goin’ back. No weapons provisions aren’t workin’. So he gets work release.
Do you know why he gets work release? So he can pay his child support. And he still is — you know, in this case he still didn’t do that. And then, he gets the jail time. That’s the deterrent. Now he’s got jail time. Now he’ll abide by the rules.
Well guess what? He didn’t.
Trial Transcript at 1635-36.
This argument clearly suggests that a progressively punitive response is necessary to control Cole’s behavior, from probation, to a no-contact order, to work release, to jail time. The next step implied — -the death penalty. In light of this argument, the failure to present evidence of Cole’s exemplary behavior in jail may have affected the jury’s decision to impose the death penalty.
In Williams v. Taylor, the Supreme Court emphasized not only the important role evidence of good jailhouse behavior plays in a capital case, but also trial counsel’s duty to conduct a thorough investigation regarding all reasonably available mitigating evidence. The Supreme Court granted habeas relief to a capital defendant based on his trial counsel’s failure to thoroughly investigate and present mitigating evidence, including evidence of his jailhouse behavior while awaiting trial. The Supreme Court noted that trial counsel failed to investigate Williams’s prison records, which showed he broke up a drug distribution ring in the facility, and that prison officials described him as being among the “least likely to act in a violent, dangerous or provocative way.” 529 U.S. at 396, 120 S.Ct. 1495.
Similar to Cole, Williams took part in a prison ministry program. Id. He also *1200 earned a carpentry degree. Id. The Supreme Court held Williams was prejudiced by his trial counsel’s failure to discover and present his correctional history to the jury, id. at 398, 120 S.Ct. 1495, despite the fact there were some negative aspects to his correctional history, i.e., he “set fire to his cell while awaiting trial for the murder at hand and has repeated visions of harming other inmates.” Id. at 419, 120 S.Ct. 1495 (Rehnquist, C.J., dissenting).
Here, the state argues the positive information about Cole’s prison behavior would not have made a difference because it was negated by the unfavorable evidence, that is, Cole failing to report to jail after a work release shift. The problem with the state’s argument is two-fold. First and foremost, the jury was already aware of the negative information. Cole’s trial counsel failed to counter the negative information already known to the jury with positive information from William Bradford, Romel Cochrel, and Sister Judith Klump. Second, the negative information involved in Williams (setting a jail cell on fire) was much more serious than Cole’s negative behavior (failure to report), and yet did not prevent the Supreme Court from finding Williams suffered prejudice from his counsel’s failure to investigate and present positive jailhouse behavior.
Given Skipper’s distinction between jailhouse behavior testimony directly from jailers, as opposed to similar character evidence from a capital defendant or his family members, the Missouri Supreme Court’s decision that Cole’s good jailhouse behavior would have merely been cumulative of other evidence of Cole’s good behavior is an unreasonable application of Supreme Court precedent. In addition, the emphasis the Supreme Court placed on presenting positive jailhouse behavior in Williams, despite the existence of some negative information, belies Missouri’s claim that Cole did not suffer prejudice from his trial counsel’s failure to discover and present evidence of his positive jailhouse behavior.
II
For the reasons stated, I respectfully dissent from the court’s decision to affirm the district court’s denial of relief on the claim that Cole’s trial counsel failed to investigate and present evidence regarding Cole’s exemplary prison conduct. I would grant habeas relief on that claim and require Missouri to give Cole a new penalty phase trial.