VILLANTI, Judge.
 

 Ronald Ray Solorzano appeals the denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. The postconviction court summarily denied seven of Solorzano’s nine grounds for relief and denied the remaining two grounds after an evidentia-ry hearing. We affirm in part, reverse in part, and remand for further proceedings.
 

 Background
 

 Solorzano was charged with one count of DUI manslaughter and three counts of DUI with serious bodily injury following events that occurred on March 9, 2003. The evidence at trial showed that Solorza-no had spent the afternoon and evening of March 9 at Gilligan’s Bar with a group of friends and co-workers. At some point in the evening, one of Solorzano’s co-workers, Ida D’Ettorre, became too drunk to drive and was feeling ill. Solorzano offered to drive Ms. D’Ettorre home. While doing so, Solorzano lost control of his truck, crossed the center median, and collided with four people on two motorcycles. One of the motorcyclists was killed; the other three suffered serious injuries.
 

 Solorzano’s defense at trial was that he was not intoxicated when the accident occurred. He contended that he had had only two or three beers during his six or seven hours at Gilligan’s and that he had been eating during that time as well. He contended that he lost control of his truck only because Ms. D’Ettorre vomited on
 
 *22
 
 him while he was driving. He also contended that his blood alcohol level was due to his having taken Nyquil for a cold rather than due to his drinking at the bar. The jury apparently rejected these defenses, and it found Solorzano guilty as charged. The trial court sentenced Solor-zano to 23.14 years in prison followed by five years’ probation. This court affirmed Solorzano’s judgment and sentence on direct appeal.
 
 Solorzano v. State,
 
 No. 2D04-2061 (Fla. 2d DCA June 22, 2005).
 

 Solorzano timely filed a motion for post-conviction relief, raising nine grounds for relief. The postconviction court summarily denied grounds one, four, five, six, seven, eight, and nine. It held an evidentiary hearing on grounds two and three, after which it denied those grounds as well. We affirm the denial of grounds one, two, three, and nine without further discussion. We also affirm the denial of grounds four and seven, but we write to explain our reasoning. As to ground five, we reverse and remand for reconsideration of this claim on its merits. Finally, as to grounds six and eight, we reverse and remand for further proceedings.
 

 Ground Four
 

 In ground four of his motion, Solor-zano alleged that his trial counsel was ineffective for failing to move to strike prospective juror Wasson, either peremptorily or for cause, after she stated during voir dire that she would want to hear “everything from everybody” before she made a decision. Solorzano alleged that this could be interpreted as Wasson placing the burden on the defense to come forward with testimony and evidence but that trial counsel never questioned Wasson about this. Solorzano alleged that he was prejudiced because there was a reasonable doubt that Wasson, who actually sat on his jury, would not be impartial if Solorzano introduced no evidence and therefore Was-son was unable to hear “everything from everybody.”
 

 The postconviction court denied this claim, attaching the portions of the transcript of jury selection during which Was-son was questioned. The postconviction court noted that these excerpts established that Wasson was not actually biased against Solorzano, and thus the court concluded that Solorzano could not state a facially sufficient claim of juror bias under the requirements set forth in
 
 Carratelli v.
 
 State, 915 So.2d 1256 (Fla. 4th DCA 2005),
 
 review granted,
 
 935 So.2d 499 (Fla.2006).
 
 [1]
 
 It is apparent from the limited postconviction record that the court denied this claim on its merits rather than for pleading deficiencies.
 

 While we agree with the postconviction court’s decision to deny Solorzano relief on this claim on its merits, we do so for a different reason. A review of the claim actually made by Solorzano shows that he did not attempt to allege that Wasson was a biased juror who was seated on the jury. Thus, the resolution of this claim was not governed by
 
 Carratelli v. State,
 
 961 So.2d 312 (Fla.2007). Instead, the substance of Solorzano’s claim was that counsel was ineffective for failing to conduct a meaningful voir dire of Wasson after she made the statement at issue. Solorzano contended that had counsel conducted further questioning of Wasson, counsel might have uncovered a basis to challenge her for cause. Alternatively, Solorzano alleged that further questioning could have resulted in trial counsel using a peremptory strike against Wasson. In essence, Solor-zano alleged that counsel was ineffective for failing to conduct a meaningful voir
 
 *23
 
 dire of Wasson that would have allowed counsel to intelligently and effectively use challenges — -whether cause or peremptory challenges- — against this juror.
 

 Even with the claim understood in this manner, however, Solorzano is not entitled to relief. A claim that counsel was ineffective for failing to “follow-up” on questioning to establish grounds for a for-cause challenge has been held to be legally insufficient because such a claim can be based on nothing more than conjecture by the defendant.
 
 See Reaves v. State,
 
 826 So.2d 932, 939 (Fla.2002) (holding that when the record does not show a reasonable basis to assert a for-cause challenge, a claim by the defendant that more information would have been forthcoming had counsel properly followed up with further questioning is mere conjecture and thus is not a legally sufficient claim for postconviction relief); see
 
 also Green v. State,
 
 975 So.2d 1090, 1105 (Fla.2008) (following Reaves); cf.
 
 Davis v. State,
 
 928 So.2d 1089, 1118 (Fla.2005) (holding that allegations that counsel was ineffective for failing to “follow up” with certain jurors in an effort to rehabilitate them to avoid cause challenges by the State was legally insufficient because the allegations were based on nothing but conjecture). Further, to the extent that So-lorzano claims that further questioning might have led counsel to use his peremptory challenges in a different manner, the claim is also based on pure speculation that will not support a claim of ineffective assistance of counsel.
 
 See Johnson v. State,
 
 921 So.2d 490, 503-04 (Fla.2005) (“To show prejudice, Johnson argues that [defense counsel] could possibly have learned more about the jurors’ views and used his peremptory challenges in a different manner to obtain a more defense-friendly jury. Such speculation fails to rise to the level of ineffective assistance under
 
 Strickland, [v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ].” (footnote omitted)).
 

 Accordingly, because Solorzano’s claim of ineffectiveness in ground four is based on nothing more than speculation, it is legally insufficient and was properly denied by the postconviction court. Further, because the claim was denied on its merits, Solorzano is not entitled to leave to amend under
 
 Spera v. State,
 
 971 So.2d 754, 761 (Fla.2007) (requiring that a defendant be given at least one opportunity to amend a
 
 facially insufficient
 
 claim for relief in a motion filed pursuant to rule 3.850). Therefore, we affirm the denial of relief on this ground.
 

 Ground Five
 

 Ground five of Solorzano’s motion is similar to ground four but requires a different result. In ground five, Solorzano alleged that trial counsel was ineffective for failing to question prospective juror Coyne at all during voir dire. Solorzano also alleges that “neither court, state, or defense counsel” questioned Coyne, but nevertheless Coyne was subsequently seated on the jury. The postconviction court denied Solorzano relief on this ground, stating that Solorzano had failed to “allege how the juror was incompetent or, for that matter, biased against him such that the juror should not have served on his case.”
 

 As with ground four, it appears from the postconviction court’s ruling that it was analyzing Solorzano’s claim as one of juror bias under
 
 Carrateüi
 
 But, as with ground four, our reading of Solorzano’s claim is that it alleges a claim based on ineffective assistance of counsel for failing to conduct a meaningful voir dire — not the failure of counsel to properly preserve a challenge for cause, which was the issue addressed in
 
 Garratelli.
 

 Claims based on ineffective assistance of counsel for failing to conduct a
 
 *24
 
 meaningful voir dire implicate the defendant’s constitutional right to have his case tried before a fair and impartial jury.
 

 Voir dire
 
 plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate
 
 voir dire
 
 the trial judge’s responsibility to remove prospective jurors who will not be able impartially to follow the court’s instructions and evaluate the evidence cannot be fulfilled.
 
 See Connors v. United States,
 
 158 U.S. 408, 413, 15 S.Ct. 951, 953, 39 L.Ed. 1033 (1895). Similarly, lack of adequate
 
 voir dire
 
 impairs the defendant’s right to exercise peremptory challenges where provided by statute or rule, as it is in the federal courts.
 

 Rosales-Lopez v. United States,
 
 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981) (footnote omitted);
 
 see also Lavado v. State,
 
 469 So.2d 917, 919 (Fla. 3d DCA 1985) (Pearson, J., dissenting),
 
 dissent adopted by Lavado v. State,
 
 492 So.2d 1322, 1323 (Fla.1986). Thus, “[djuring voir dire, counsel must question prospective jurors so that counsel can reasonably conclude that ‘the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court.’ ”
 
 Mansfield v. State,
 
 911 So.2d 1160, 1172 (Fla.2005) (quoting
 
 Spencer v. State,
 
 842 So.2d 52, 68 (Fla.2003)). If trial counsel wholly fails to question a juror during voir dire, counsel’s conduct may be deficient.
 
 See, e.g., Mansfield,
 
 911 So.2d at 1172;
 
 Cole v. State,
 
 841 So.2d 409, 415 (Fla.2003);
 
 Teffeteller v. Dugger,
 
 734 So.2d 1009, 1020 (Fla.1999). In that case, prejudice would be inherent in the denial of the defendant’s constitutional right to be assured of a fair trial before an impartial jury.
 
 See Rosales-Lopez,
 
 451 U.S. at 188, 101 S.Ct. 1629. However, such a claim could be conclusively refuted by the record if the record shows that the trial court or the prosecutor otherwise asked sufficient questions of the venire, thus rendering any questioning by defense counsel redundant.
 
 See Mansfield,
 
 911 So.2d at 1172;
 
 Cole,
 
 841 So.2d at 415;
 
 Teffeteller,
 
 734 So.2d at 1020-21;
 
 Martinez v. State,
 
 655 So.2d 166, 168 (Fla. 3d DCA 1995). Such a claim might also be conclusively refuted by the record if the defendant personally and affirmatively accepted the jury prior to its being sworn, thus affirmatively representing to the court that the jury composition and selection process were acceptable.
 
 Cf. Muhammad v. State,
 
 782 So.2d 343, 353 (Fla.2001) (finding that a defendant who personally affirmatively accepted the jury before it was sworn had “ratified the procedure and accepted the jury” and thus could not complain of a due process violation during jury selection on direct appeal).
 

 Here, Solorzano alleged that defense counsel wholly failed to question Coyne during voir dire and that, as a result, counsel had no basis for determining whether Coyne was competent to sit as an unbiased juror. Importantly, Solorzano also alleged that neither the trial court nor the prosecutor questioned Coyne. Accordingly, Solorzano has stated a facially sufficient claim for ineffective assistance of counsel based on the lack of meaningful voir dire. On remand, the postconviction court must either attach portions of the transcript that conclusively refute Solorza-no’s claim of an inadequate voir dire of Coyne or hold an evidentiary hearing on this issue. This disposition moots Sokmza-no’s claim that he should be granted leave to amend under
 
 Spera.
 

 Ground Six
 

 In ground six of his motion, Solor-zano alleged that trial counsel was ineffective for failing to investigate and call
 
 *25
 
 “Bartender Dan.” Solorzano alleged that Bartender Dan, who was working at Gilligan’s on the day in question, would have testified that Solorzano had been drinking only sparingly and that he was not impaired when he left Gilligan’s. The post-conviction court summarily denied relief on this ground, finding that Bartender Dan’s testimony would have been cumulative to testimony presented by Solorzano and Ms. D’Ettorre. We disagree.
 

 Solorzano’s defense at trial was that, despite his blood alcohol level, he was not unpaired and that the accident was not caused by any impairment. Instead, according to Solorzano, the accident was caused solely by his reaction to Ms. D’Et-torre vomiting on him. In furtherance of this defense, Solorzano testified that while he had had several drinks he was not impaired. He also presented Ms. D’Et-torre’s testimony that he was not impaired.
 

 In this ground of his motion, Solorzano alleged that he told his counsel about Bartender Dan, who allegedly would have testified that Solorzano had no more than three drinks during the time he was at Gilligan’s and that Solorzano was not impaired when he was there. The postcon-viction court found that this evidence would be cumulative in light of the testimony presented by Solorzano and Ms. D’Ettorre. However, in light of the source of the proffered evidence, characterizing it as cumulative was improper.
 

 In
 
 Skipper v. South Carolina,
 
 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), Skipper offered testimony of his “good adjustment” to prison as mitigating evidence during the penalty phase of a capital murder case. The trial court allowed Skipper, his former wife, his mother, his sister, and his grandmother to testify to his adjustment to prison. However, when Skipper sought to call two jailers and a “regular visitor” to the stand to testify to his adjustment to prison, the trial court excluded the testimony as cumulative. The Supreme Court reversed, stating:
 

 The evidence petitioner was allowed to present on the issue of his conduct in jail was the sort of evidence that a jury naturally would tend to discount as self-serving. The testimony of more disinterested witnesses-and, in particular, of jailers who would have had no particular reason to be favorably predisposed toward one of their charges-would quite naturally be given much greater weight by the jury.
 

 Id.
 
 at 8, 106 S.Ct. 1669;
 
 see also Valle v. State,
 
 502 So.2d 1225, 1226 (Fla.1987) (finding that proffered evidence was not cumulative when it “differed in quality and substance” from that of the other witnesses).
 

 Here, the testimony offered by Solorza-no in support of his defense that he was not impaired was the sort of evidence that a jury would tend to discount. Clearly, Solorzano’s own testimony that he was not impaired would be considered self-serving. Further, other evidence had already established that Ms. D’Ettorre was so drunk that she could not walk unaided and that she had been physically ill in the parking lot of Gilligan’s. Thus, the jury would likely have tended to discredit Ms. D’Et-torre’s recollection and/or interpretation of Solorzano’s relative impairment.
 

 Bartender Dan, however, would have been a relatively disinterested witness whose testimony on the issue would have “differed in quality” from that provided by Solorzano and Ms. D’Ettorre and would have been given greater weight by the jury. In light of this difference in the “quality” of the testimony, the posteonvietion court abused its discretion in finding that Bartender Dan’s testimony would have been cumulative and in summarily denying relief on this ground. Therefore,
 
 *26
 
 we reverse the summary denial of this ground and remand for an evidentiary hearing.
 

 Ground Seven
 

 In ground seven, Solorzano contends that trial counsel was ineffective for failing to investigate and call as a witness Solorzano’s brother, Roger. According to Solorzano, Roger would have testified to both Solorzano’s and Ms. D’Ettorre’s “de-meanors” before they left Gilligan’s. The postconviction court denied relief on this ground, finding that Roger’s testimony would have been cumulative. The postcon-viction court is correct on this issue.
 

 Unlike any testimony from Bartender Dan, the testimony that Roger would have allegedly given would not have been different in quality and substance from that given by Solorzano and Ms. D’Ettorre. Because Roger is Solorzano’s brother, the jury would have been just as likely to discredit his testimony as it would Solorza-no’s. Therefore, the postconviction court did not abuse its discretion in finding that Roger’s proffered testimony was cumulative and that trial counsel was not ineffective for failing to present this cumulative evidence. Accordingly, we affirm the summary denial of this claim.
 

 Ground Eight
 

 In ground eight of his motion, So-lorzano alleged that trial counsel was ineffective for failing to investigate and call as a witness “Fire Medic Ryan Kelleman.” According to Solorzano, Fire Medic Kelle-man would have testified that Solorzano had vomit on his shirt at the scene, and this testimony would have supported So-lorzano’s defense that the accident was caused by Ms. D’Ettorre vomiting on him. The postconviction court denied relief on this ground, finding that the proffered testimony would have been cumulative. Like it did in ground six, the postconviction court erred in its analysis of this ground for relief.
 

 At trial, both Solorzano and Ms. D’Et-torre testified that Ms. D’Ettorre vomited in the car and all over Solorzano immediately before the accident. Solorzano’s defense was that this unexpected event, and not any alleged impairment, is what caused him to lose control of his truck. However, the State presented the testimony of the investigating police officer, who testified that she neither saw nor smelled vomit on Solorzano’s person or in his truck while she was at the scene investigating the accident. In his motion, Solorzano alleged that Fire Medic Kelleman, who was the first medic to arrive at the scene, would have corroborated his testimony that he had vomit all over him.
 

 As with Bartender Dan, Fire Medic Kelleman’s proffered testimony would have differed in quality from that of So-lorzano and Ms. D’Ettorre. As a medic responding to the scene, Fire Medic Kelleman would have been a disinterested witness whose testimony would allegedly have supported Solorzano’s testimony and conflicted with that of the only other disinterested witness, the investigating police officer. Because Fire Medic Kelleman was a disinterested witness, the jury would have been less likely to discredit his testimony concerning whether there was vomit on Solorzano than it would So-lorzano’s testimony on the subject. Further, because Fire Medic Kelleman was a medic and a first responder, the jury might have been more likely to credit his testimony over that of the investigating officer.
 

 Because Fire Medic Kelleman’s alleged testimony would have differed in quality from that given by Solorzano and Ms. D’Ettorre on a disputed issue, the alleged testimony was not cumulative, and the postconviction court abused its discretion
 
 *27
 
 in finding that it was. Therefore, we reverse and remand for an evidentiary hearing on this claim.
 

 Affirmed in part; reversed in part; and remanded for further proceedings.
 

 KELLY and KHOUZAM, JJ., Concur.
 

 [1]
 

 . The supreme court affirmed the Fourth District's decision in
 
 Carratelli
 
 after the postcon-viction court entered its order.
 
 See Carratelli v. State,
 
 961 So.2d 312 (Fla.2007).